In the Matter of the Estate of CHARLES GUGGINO, Deceased.

Surrogate's Court, Monroe County, October 5, 1936.

*C. J. Mondo*, for Joseph LoPalo, as executor.

*K. B. Keating*, for Joseph LoPalo, individually.

*Drew & Drew*, for L. & R. Siracusa and J. Piano, attorney in fact.

*G. Y. Webster*, special guardian.

FEELY, S. The objectants seek to surcharge the executor with the amount of certain deposits claimed by him individually to belong in joint survivorship accounts standing in his name and that of this testator, who was his uncle. One account, that had first stood in the name of the testator alone in a branch of the Lincoln Alliance Bank and Trust Company, was made joint as aforesaid on the third day before testator's death, which occurred just before midnight of December 27, 1934, and the other account was a new one that was opened with the Union Trust Company by the agreement on the signature cards, hereinafter set forth, which were signed twice by the testator and his nephew, on the day before testator's death, and immediately delivered to the officer of the trust company, in whose presence they had been signed and who joined in the agreement on behalf of the trust company by signing his name thereto also. There is no suggestion that any of these transfers or agreements were made or intended merely for the convenience of the testator, or with any other intention than to create at once the relation of joint ownership of these funds, with the right of survivorship, and without any reservation other than that which is essential to such holding of a fund or deposit.

The old account in the Lincoln in testator's name alone carried a credit balance of $239.66 on the day it was agreed to be thereafter held jointly as aforesaid. This balance clearly passed to the

survivor by virtue of that agreement. At the same time this old account in the Lincoln was agreed to be held jointly, two checks were signed by testator on his two savings accounts in Niagara Falls, with the intention of adding them to this local account — one check for $616.49 on the Power City Trust Company, and the other for $2,612.94 on the Niagara County Savings Bank. The proceeds of the first check, on the Power City Trust Company, for $616.49, remitted on December twenty-fourth, arrived here after the holiday, on December twenty-seventh; and on that day, in the due course of banking business, were entered on the bank ledger here of this joint account. This sum also clearly passed to the survivor, by virtue of the agreement of deposit, because it was not until midnight of that day that testator died. The attending physician said he found testator rational in the forenoon of that day; but that at his second visit, about six P. M., he found the patient in great pain, and at this time not in condition to do any business. However, the acceptance by the Power City Trust Company of this check on the preceding day, if not sooner, passed title, without regard to the time when the proceeds arrived in this city.

The Niagara County Savings Bank acknowledged the receipt by it of the check for $2,612.94 and the pass book by its letter which was received here by the Lincoln Alliance Bank and Trust Company on December twenty-seventh. The savings bank having thus accepted this check during the business hours of the twenty-seventh, before the maker's death, title to this money then passed to the payees subject to their agreement for joint survivorship holding of the same. The fact that the proceeds of this check on the savings bank for $2,612.94 did not actually arrive here until December thirty-first, four days after Guggino's death, is immaterial; but as the local bank officials had learned of testator's death, this remittance was held up here; and it was finally, on advice of the bank's counsel, credited to the personal account of the survivor, with a notation that it was not to be withdrawn until after the judicial settlement. By virtue of the contract these men had entered into, as between themselves and jointly with the bank, this fund also passed to the survivor at the death of his codepositor, regardless of the belated arrival here of the remittance.

The remaining question arises out of the opening of the new joint survivorship account in the Union Trust Company. On the day before testator's death he informed the manager of a branch of the Union Trust Company, Mr. F. J. Cappellino, that he had a savings deposit of lire in the Banca Commerciale Italiana, in Rome, Italy, which he wished to withdraw and place in joint

survivorship account here in the name of himself and his nephew, the executor, who had been kind to him in his illness. Testator had come here in April, to the home of the nephew, suffering from cancer of the stomach; and he lived therein until he died in December following. At the time of the interview with the manager, testator had been quite ill, and had been taking a narcotic under the advice of his physician; but the latter testified the patient was competent and knew what he was doing at that time. The manager's testimony is to the same effect.

In the interview with the bank manager, the testator inquired what would be done in case testator died before the money arrived here from Italy. The bank manager said to him this would be taken care of by the survivorship feature of the account. Testator then called in his nephew and asked him if that arrangement was satisfactory, and on being assured it was, testator and the nephew each then signed in duplicate the contract evidenced by the signature cards used by this trust company for such accounts, which the bank manager thereupon signed also. These cards, set out in full below, carried the provisions necessary to carry out the intention of the parties to hold these funds jointly with right of survivorship; and the manager, in testator's native tongue, explained the agreement to testator, and assured him that if he died the nephew would get this account. At the same time testator signed a power of attorney to this trust company to procure this money from the Italian bank to the credit of the attorney in fact for the credit of the joint survivorship account. Testator also signed what we would call a " check " to close out the account, but in the Italian form it is named an " assignment " of the account to the attorney in fact for the purpose of " extinguishing " the account the parties purposed to transfer from Italy to this country. The pass book, necessary to be presented in order to withdraw these lire, was also delivered by testator to the bank manager. The manager then gave the testator, at the latter's request, a receipt for the papers so signed; and proceeded at once to mail the pass book, check or " assignment," and the power of attorney, to Italy; but on the following day, while these papers were *en route* in the mail, testator died. In due course the proceeds of these 86,000 lire were remitted to the Union Trust Company, which is still holding the same.

With respect to this belated remittance from Italy, the objectants claim the estate is the owner, on the ground that the intervening death cut off the power of attorney and the order to pay embodied in the check or " assignment." The executor individually claims these moneys belong to him as the survivor in the joint account

agreement, under which those moneys were fetched here, notwithstanding they arrived here after the testator had died.

The completed three-party contract, represented by the cards signed in duplicate and delivered as above mentioned, is so important in this matter that it is now set out in full, as follows:

"Rochester, N. Y. *December* 26, 1934

"We, Charles Gugino and Joseph LoPalo do hereby open a deposit account with the Union Trust Company cf Rochester in the following name and form:

Charles Gugino or Joseph LoPalo
to be paid to either, or the survivor of them.

"We declare that we are the joint owners of the money this day deposited in said account and that any future deposits made by either of us in said account or any interest accrued or credited thereon shall be and is our joint property; either one of us, before or after the death of the other, may sign checks, receipts or orders on said account, whether drawn to the individual order of the signer or otherwise, and receive the whole or any part of said moneys before or after the death of the other, and we hereby authorize and empower said Union Trust Company of Rochester, to make payment of all or any part of said moneys on the signature of either of us and hereby acquit said Union Trust Company of Rochester for any and all payments so made; at the death of either of us, the survivor shall take absolute and single ownership of the balance then due the account. Each of us authorizes the other to endorse and to deposit to the credit of said account any check or other instrument for the payment of money which may be drawn or endorsed to our joint order or to the order of either of us individually.

"(signed)  CHARLES GUGINO
"        JOSEPH LOPALO

"Witnessed by
"F. J. Cappellino
"(signed)"

(On the rear)

"To The Union Trust Company of Rochester, N. Y.

"You are hereby authorized to recognize the signatures below in the payment of funds, and in the transaction of any business in connection with this account. In consideration of your accepting and continuing this account, we hereby consent and agree to the Regulations which are printed in the Pass Book issued therefor, and hereby made part of this agreement, and also to the following:

"1. This account shall be a thrift account and shall not be subject to check.

" 2. The Pass Book shall be presented with each withdrawal from this account, and the possession of the Pass Book shall be sufficient authority to you to warrant any payment made and entered in it. You shall have the right to require thirty days written notice of intention to withdraw any deposit, and such thirty days notice shall be necessary at all times before any withdrawal unless specifically waived by you:

" Authorized signatures:  CHARLES GUGINO (signed)
                         JOSEPH LOPALO      (signed)
" Dec. 26, 1934 . . . . . . . . .  Introduced by F. J. C.  (signed)
            " Account opened by F. J. C.  (signed) "

This completed three-party agreement is the distinguishing feature of this case. The situation is not one of a power-of-attorney alone, nor that of a sole grantor which would die with the death of the sole grantor before performance, especially as one of the grantors of this power is still living; nor is this case one of a check alone whose maker died before the bank had honored it; nor is this case at bar only a combination of those features — as if nothing more had been done than to deliver a check to an agent, and the maker died before the bank had honored the check. The executor's individual claim to the proceeds of these two checks depends on the effect to be given to the fact that, in addition, there was simultaneously completed a three-party agreement, not without some vestige of consideration, that they were the joint owners of this fund, and that it would be both fetched and held for the credit of the two men, either or survivor to draw. The mutual promises to that effect supported one another; and constitute a contract intended to vest absolute certain rights presently. (See *Deal* v. *Merchants & Mechanics S. Bank*, [Va. App.] L. R. A. 1917C, 548; 91 S. E. 135; *Goldston* v. *Randolph*, —— Mass. ——; 103 A. L. R. 1117, 1123, n.; 199 N. E. 896.) The fact of possible death was contemplated not as a condition barring the creation of the agreement; but as effecting the procurement and disposition of the moneys even before they had been actually deposited here, pursuant to the contract, as conditions might subsequently arise.

The objectants claim this transaction was an attempt to make a gift, and that it fails for lack of completion by delivery.

A gift can legally be made of an undivided interest in property. The intention to do so herein is evidenced by an express contract, signed by both the testator and the survivor, as well as by the bank. By entering into such a contract, and by delivering that contract and the pass book, without reservation, to the bank, all necessary evidence was thereby furnished that the " gift " had actually been given, if it be called such, where ordinarily such evidence is furnished by such physical or symbolical delivery as the nature

of the subject-matter permits. The rights of these parties under the contract made and delivered herein are to be judged by the principles of contract, rather than by the common law on gifts or trusts.

The objectants also claim that the money must first have become actually deposited here in the account before the joint and survivorship rights became effective; and they quote section 198 of the Banking Law as to deposits in trust companies, which in part reads thus: " When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made, by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt or acquittance of the one to whom such payment is made, shall be a valid and sufficient release and discharge to said company, for all payments made on account of such deposit prior to the receipt by said company of notice in writing signed by any one of such joint tenants, not to pay such deposit in accordance with the terms thereof."

Obviously, the bank could not be held liable for money it never had received; and so the statute, for the bank's protection, provides that the bank's responsibility attaches only after receipt of the money, or of notice; and that in so far as the bank is concerned, the deposit or additions thereto, " upon the making thereof," may safely be regarded by the bank as the property of either or survivor. This provision for the protection of the bank, however, leaves the question open as to the rights of the two depositors *inter sese* as regards the moneys; which depend on their agreement not alone with the bank but also among themselves generally or specially. Thus one depositor may be accountable to the other for overdrafts during the life of both, beyond the actually agreed or presumptive share in the account of the one so drawing. (*Matter of Sutter*, 138 Misc. 85; affd., 232 App. Div. 45; affd., 258 N. Y. 104.)

In the case at bar the bank, by accepting the pass book, check or " assignment " and the power of attorney to fetch the fund from Italy, pursuant to the tripartite contract represented by the cards, incurred a definite responsibility to these two men and to either or the survivor of them. It had thereby actually begun to deposit this fund with itself.

The decisive fact remains, therefore, unimpaired, that there is here a completed contract that was intended to create presently the rights of joint survivorship on this fund; and that, before the death of testator, this agreement had been carried out, as far as it was possible, by the delivery of the signed contract, the check, pass book and power of attorney to the bank and by the bank forwarding the check and pass book, with the power, to Italy to reduce the fund to its possession. The parties had absolutely agreed that they were joint owners of this fund, and that if either of them — and especially the moribund testator — should die before the local bank actually received the money, the survivor as the " absolute and single " owner should have the right to withdraw it after it had come into the actual possession of the local bank. The fact that the testator did die before the moneys arrived here from Italy is immaterial now, as that event was provided for in the contract.

On notice or voluntary appearance, submit for signature and entry the decree of judicial settlement herein, framed in accord with this decision.