In the Matter of the Estate of JANE E. SUTTER, Deceased.

Surrogate's Court, Monroe County, October 3, 1930.

*Charles B. O'Connell,* for the petitioner.

*Peter Smith,* for the respondent.

FEELY, S. This is a proceeding brought, pending a judicial settlement, by the survivor of two depositors in a bank account that had been opened in a local trust company by the decedent with her own funds only by having added to her own name that of the petitioner, in the form " either or survivor may draw," against the administratrix of the decedent *for an accounting* of moneys drawn out of said two-name account — not in excess of half thereof at any time — by the decedent in her lifetime, which withdrawals have been traced into the individual account of the decedent in another bank.

The undisputed facts are that the decedent was a widow, beyond middle age, who worked as a housekeeper, mostly in the summer; but in the winter boarded and lodged, for longer or shorter periods, in the home of the petitioner, who was not related to the decedent in any way but by ties of friendship. Decedent had been given the life use of a house in Rochester from which the rental received by her amounted to thirty dollars a month. It is not likely decedent had any other regular income, except interest on the two bank deposits which represented her savings, both of which at the times herein mentioned did not exceed the sum of $5,000. Decedent died suddenly. She had not been ill, or dependent on any one else to any extent that is material here.

Four years before her death, and on the 16th of October, 1924, decedent changed over one of her individual bank deposits — the one she had with the Security Trust Company, with about $2,000 then to her individual credit — into the name of herself and this petitioner, in form of entry upon the bank book " either or survivor may draw; " and the trust company issued its new pass book accordingly, after having taken from these two ladies a standard signature card bearing only a sample of the handwriting of each to accompany the account.

Beyond the fact that petitioner made no direct contributions to this account, either then or thereafter, and the fact that from the signing of the signature card the petitioner, at the outset, probably became informed, to some extent, of the arrangement with the bank, there is no evidence in this record from which to gather what, if any, common understanding was reached by these two ladies in regard to this deposit. Decision must depend largely upon the presumptions. It is not claimed, nor is it likely, that there was any plan of serving the convenience of the decedent by such form of account. She was well able to get about and care for herself then and for a long time afterward. Upon her sudden death, without leaving a will, the petitioner made a large claim for board and lodging against this estate, which was rejected by the administratrix and after trial disallowed by the surrogate; but in the course of the testimony in support of that claim, petitioner's daughter testified that decedent had said, in asking for accommodation in the house of the petitioner's family, a long time before this account was changed over, that she would remember them in her last will for taking her in. She lived with them several winters, on and off; but died intestate. These facts, although not in this record, are fresh in the minds of all concerned herein, by reason of the recent trial of the claim for board and lodging, at a weekly rate — not on the promise to remember them in the will. Upon

the disallowance of that claim, a new tack was taken by instituting this proceeding, pending the judicial settlement. This development of the case would tend somewhat to indicate that this account was put in both names, not to serve any immediate need or expected convenience of the decedent; but with the object of enabling the petitioner to withdraw any balance on hand at the death of the decedent, and use it as her own. This balance, in the end, proved to be about $1,200, which was more than a moiety of the original account and its earnings. No question whatever is raised herein as to the petitioner's right to have appropriated, as she did, the balance at death to her own use. Our present difficulty centers in the booking phrase, " either * * * may draw," rather than the survivor, as bearing on some lifetime withdrawals of less than half by decedent, not on the *post mortem* appropriation of the balance. The question is: What is the effect of the word " either " as between the parties — other than the bank? It also appeared that after the account had been put into both names, it increased by the addition of interest as accrued, and by deposits, from time to time, of the sum of thirty dollars, presumably rentals; and by small sums of varying amounts which might have been decedent's wage savings.

In decedent's lifetime, two withdrawals were made by her from this account, without the knowledge of the petitioner, the second being more readily traceable than the first. On Thursday, February 16, 1928, three days before decedent died by her own signature alone she checked out of this account the sum of $445.13, which was booked by the bank to its credit on Saturday, the eighteenth. This sum went to buy ten shares of stock which the administratrix received later on from the purchasing agent, and sold for the estate and accounted for the proceeds in the judicial settlement as a charge of $830.44, in which is included $27.08 as the value of fractional rights.

The first withdrawal, that is not so readily traceable, was likewise made by the signature of this decedent alone on a check against this account of $469.65, dated February 24, 1927. What she did with this money does not appear. Counsel for petitioner argues that about a month later she deposited in her individual account with the East Side Savings Bank the sum of $600 on March 12, 1927; and that this must have been made up of the $469.65 withdrawn from the trust company joint account a month before, plus rent and wage savings from the last respective dates of deposits or credit on both accounts, which might roughly be described as over the winter of 1926–27. While her rent and interest over that winter would be offset by her own board and lodging expense, and

nothing appears as to taxes or repairs, it is not unlikely that she had saved out of her summer wages the $130 needed to return the $469.65 she had withdrawn less than a month before, but apparently had not used as she first intended. For the purposes of this submission, it will be assumed that both those withdrawals from the trust company joint account, with a current gross credit of about $2,700, went in each instance to the individual account of the decedent, and were found among her individual assets at death, with $385.13 profit made on the latter. The question now is whether the decedent is accountable for those two portions of her moiety that were withdrawn by the decedent in her lifetime, without the knowledge of the other person whose name had been added to the account, and appropriated to her own use, and found among her assets, with the increase thereof, in the sum of $1,275.57.

The decision of this question must depend largely upon the legal presumptions. The presumption of equality of interest applies. (*Loring* v. *Palmer*, 118 U. S. 321.) In the absence of evidence of a definite agreement to the contrary (*Matter of Barefield*, 177 N. Y. 387; *Newhouse* v. *Harrinck*, 227 App. Div. 392; *Scanlan* v. *Meehan*, 216 id. 591), the shares of the respective interests will be presumed to be equal to the number of cotenants; but if it appeared only that each had contributed a different amount to the common fund, then the share of each would be presumed to be in the proportion that his contribution bore to the whole deposit. Where, however, one alone put up the whole fund, he is presumed to have made a gift of half of it to the non-contributing joint tenant, in order to reconcile the joint feature of the arrangement with the unilateral source of the property involved — the contract with the bank being evidence, with other written memoranda, tantamount in effect to evidence of delivery showing intention actually carried into effect. (*Moskowitz* v. *Marrow*, 251 N. Y. 380.)

Decedent's act of putting her own funds into this "either or survivor" form of deposit resulted, in the language of the decisions interpreting the Banking Law, in creating between her and this claimant a "joint tenancy" wherein claimant, at the date of such transfer into both names, became the owner in joint tenancy as to, at least, one-half of the joint property. This moiety came to this claimant at the creation of the tenancy as an undivided moiety of the whole. This initial moiety remained intact at the death of the claimant's cotenant. The form of the book entry remained unchanged. By virtue of it claimant, as survivor, upon the death of the decedent, received her own presumptive moiety of the fund, and also the then unconsumed residue of the decedent's moiety.

Decedent appears to have availed herself of the privilege expressed

in the contract embodied in the banking formula " either * * * may draw;" but she did not withdraw all of her own half. The less amount she did so withdraw she took without any other specific consent of her cotenant, this claimant, than that contained in said words " either * * * may draw;" and those words on their face seem a sufficient warrant therefor.

Moreover, it is well established that a joint tenancy is severable by the act or omission of one of the cotenants, without the consent of the other.

A joint tenancy may be voluntarily severed by a conveyance of any interest, or by partition, or involuntarily, by a levy and sale under execution where the interests of any are subject to such levy. Either of the owners may, at his pleasure, dispose of his share, and convey it to a stranger, who will hold undivided and in common with the other owner. For the rule is that anything which destroys the unity of title or interest without affecting the unity of possession will turn the interest severed from the others into a tenancy in common as regards the remaining joint tenants. (*Baker* v. *Oakwood*, 123 N. Y. 16; 10 L. R. A. 387.) As such severance, to be effective, is required to occur during the lifetime of the joint tenants, a devise by such joint tenant is inoperative. (7 R. C. L. p. 815, § 7.) For the devise does not take effect until after the death of the devisor, and the claim of the surviving tenant arises in the same instant with that of the devisee, and is preferred. (7 R. C. L. 813, § 4.)

The foregoing paragraph fairly summarizes the rulings made in these cases: *Dewey* v. *Brown* (133 Misc. 69); *Matter of McKelway* (221 N. Y. 15); *Loker* v. *Edmans* (204 App. Div. 223); *Matter of Weissbach* (111 Misc. 501); *Matter of Perry* (104 id. 115); *Matter of Cossitt* (204 App. Div. 545; 236 N. Y. 524 — a Monroe County Surrogate's Court case); *Matter of Tilley* (166 App. Div. 240; affd., 215 N. Y. 702); *Matter of Porianda* (135 Misc. 389); *Ellison* v. *Murphy* (128 id. 471); *Matter of Carlin* (134 id. 596).

By such severance a tenancy in common results, and only the prospective right of survivorship is destroyed. Some cotenancy, however, remains even after such severance; and in this lies the difference between a case of severance and one of destruction in which one cotenant alone attempts to destroy every vestige of the joint tenancy and also any further cotenancy whatsoever, by appropriating to himself alone, not only his own moiety but also that of his cotenant as well. Such attempt at utter destruction of all cotenancy in the premises, being wholly unwarranted and ineffectual as such, the rights of the cotenants are deemed to remain as they were before such destructive attempt had been made (See *Matter of Klenk*, 150 N. Y. Supp. 365); and the survivor

is awarded the whole fund in such case, not merely a moiety of it, where the whole fund is found among the assets of the deceased cotenant who has misappropriated it. (*Moskowitz* v. *Marrow*, 251 N. Y. 380.) Rulings to that effect, which have been so earnestly and extensively urged upon this court herein, are not decisive of a case of severance, nor of the like case of a withdrawal of less than the presumptive share. that leaves the joint tenancy intact otherwise. (See *Matter of Carlin*, 134 Misc. 596.) It is in this latter class that the case at bar seems to belong. I conclude, therefore, that decedent was well within the right of either to draw when she took out only part of her own presumptive half, and left the rest of it intact, together with all of this claimant's presumptive half, under the original form of the joint deposit, whereby this claimant, as survivor, was entitled to, and did take, the whole residue on the death of the decedent. Neither the decedent, therefore, in her lifetime, nor her administrator after her death, could be held accountable to this claimant, on the facts of this case, for the portion of the half so withdrawn by the decedent in her lifetime.

Enter a decree dismissing the petition on the merits, with costs to the respondent, to be taxed and inserted in the decree.