## In the Matter of the Estate of Edward B. Halsted, Deceased.

Surrogate's Court, New York County, May 18, 1940.

*Yorke Allen*, for the executor.

*Patterson, Eagle, Greenough & Day* [*William B. Denton* and *Dodge L. Marks* of counsel], for Osborne Halsted, Jr., and for The Plainfield Trust Company of Plainfield, N. J., as ancillary executor of the will of Osborne Halsted.

*Payne, Wood & Littlejohn* [*William J. Beglin* of counsel], for Sarah Townsend Coles Halsted, beneficiary.

*Barry, Wainwright, Thacher & Symmers* [*Howard B. Nichols* of counsel], for Marguerite Carpenter Ivins, Clara Carpenter and The American Society for the Prevention of Cruelty to Animals, legatees.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Otis T. Bradley, Edwin E. Peterson* and *Andrew Y. Rogers* of counsel], for The Northfield Schools.

*Stewart & Shearer* [*Robert A. West* of counsel], for Goddard Neighborhood Center (formerly The Friendly Aid Society).

*Louis W. Stotesbury*, for The Humane Society of New York.

*Forrest Hyde*, for Duke University.

*Wright, Gordon, Zachary & Parlin* [*Robert M. Bozeman* of counsel], for The John Hopkins University.

*John J. Bennett, Jr., Attorney-General*, for the State of New York.

*John P. O'Brien*, special guardian of infants.

DELEHANTY, S. In this accounting proceeding decision of several controversies is necessary. The first has to do with the powers of the executor and trustee. The will appointed one corporate trustee. The codicil substituted another "with all the duties in said will imposed upon and all powers and rights in said will conferred upon" the first named. Reading codicil and will together, as is required, there is no limitation by way of the codicil of the powers and discretions vested in the executor and trustee by the will. Accordingly such powers inure to the acting executor and trustee.

The second question arises in respect of tangible personalty specifically bequeathed to a person not related by blood to the testator. This intended legatee predeceased the testator. The court holds that the legacy lapsed.

The third question concerns itself with the rights of a legatee known as Northfield Schools, a corporation. By paragraph sixth of the will this corporation is granted a one-half remainder interest in a trust of $250,000 erected by the will for the benefit of the brother of deceased. By the seventh paragraph of the will the same corporation is granted one-half the remainder interest in a different trust. By the fifteenth paragraph of the will the same corporation is granted one-half of the residuary estate. In this grant there is express direction as to how the funds when received by the legatee are to be used. The second paragraph of the codicil revokes paragraph seventh of the will and substitutes new provisions for disposal of the remainder interest. Under the new provisions Northfield Schools does not benefit. The fourth paragraph of the codicil revokes that part of the fifteenth paragraph of the will which granted one-half of the residuary estate to Northfield Schools and directs a different disposition of this one-half. Under this paragraph of the codicil no benefits are to accrue to Northfield Schools.

In the foregoing recitals it is to be noted that no cancellation of the gift to Northfield Schools under the sixth paragraph of the will is accomplished by the codicil. If cancellation of the gift is to be found it must be spelled out by implication. Argument is made that the language of the gift in the sixth paragraph of the will so identifies that gift with the residuary gift under the fifteenth paragraph that the revocation of the latter gift destroys the former as well. The text thus relied upon is:

" (b) One-half thereof to Northfield Schools, a corporation located at East Northfield, Mass., to be added to the gift to said Northfield Schools provided for in the fifteenth clause of this will and to be disposed of as therein provided."

It is urged by those who claim revocation that the quoted direction that the gift be merely added to the gift under the fifteenth paragraph requires a ruling that the gift under the sixth paragraph fails since the gift under the fifteenth paragraph was revoked. The court rejects this argument. The general rule is that a will and codicil are one testamentary instrument and that the provisions of the will may not be disturbed further than is necessary to give effect to the codicil. No revocation of prior testamentary provisions can be spelled out of the text of a codicil unless its language clearly requires that result. (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86; *Goodwin* v. *Coddington*, 154 id. 283; *Hard* v. *Ashley*, 117 id. 606; *Matter of Mitchell*, 152 Misc. 228; *Viele* v. *Keller*, 129 N. Y. 190; *Redfield* v. *Redfield*, 126 id. 466; *Austin* v. *Oakes*, 117 id. 577; *Matter of Saks*, 170 Misc. 469; *Matter of Armstrong*, 125 id. 153.)

The legatee is bound to take the gift under the conditions set forth in the fifteenth paragraph of the will. Even though that paragraph has been revoked by the codicil it still fixes the conditions under which the gift pursuant to the sixth paragraph is to be used by the beneficiary. (*Wetmore* v. *Parker,* 52 N. Y. 450, 464; 1 Jarman on Wills [7th Eng. ed.], pp. 169–170.)

The fourth question concerns the source of payment of estate taxes. In this connection the finances of the estate are pertinent. The gross estate was in excess of $900,000. The net is approximately $781,000 after the taxes were paid. Legacies for which preference is claimed under the first eight paragraphs of the will total $763,920.53. General legacies amount to $200,000. There is no residuary, of course. The New York estate tax exceeds $15,000 and the Federal estate tax exceeds $79,000. If the claims of preference among legatees are allowed and if the preferred legatees are required to contribute ratably to the taxes something substantial can be paid on the general legacies.

The eighteenth paragraph of the will provides: " I direct that all legacy, inheritance and succession taxes of every kind of any State and of the United States upon the principal of all dispositions herein made shall be paid out of my residuary estate." " There being no residuary estate, that provision of the will has no application." (*Matter of Caswell,* 239 App. Div. 695.) The cited case is urged as authority for the position taken by the preferred legatees that they can exhaust the fund otherwise available to pay a part of the general legacies before they are required to contribute anything themselves. The case is authority against them. In it the court found explicit exemption from the tax burden in the text of the will other than the nugatory residuary clause. The decision rests on that specific text. So also it was specific text of the will before him on which the surrogate relied in *Matter of Meynen* (173 Misc. 19). The court disagrees with the position of the preferred legatees. The text of deceased's will which deals with taxes refers to taxes on " all dispositions herein made." The general legacies are provided for in paragraphs ninth to fourteenth, inclusive, of the will. The codicil merely increased to $100,000 the $50,000 gift in the ninth paragraph of the will. The text quoted from the eighteenth paragraph of the will respecting the tax burden obviously was meant by the testator to apply to the general legacies as well as to the preferred legacies. He did not thereby intend to discriminate against the general legatees and in favor of the preferred legatees because he expected obviously that neither group of legatees would have to pay the tax and that each would get his legacy in full. The general legatees suffer

diminution in their rights because of lack of estate assets but they are not called on to contribute all of their fund to the benefit of the preferred legatees. The mere fact that legacies are declared to be preferred does not mean that they escape a contribution to the estate taxes. The rule of equity and the statutory rule are to the contrary — the rule of equity because equality of burden is equity and the rule of the statute because in this will there is no operative direction against apportionment. (*Matter of Caswell, supra.*) Precedent for placing upon the preferred legatees a ratable share of the burden of the estate taxes is found in *Matter of Stanfield* (170 Misc. 447; affd., 257 App. Div. 932; leave to appeal to the Court of Appeals denied by the Appellate Division, Id. 957; leave to appeal denied by the Court of Appeals, 281 N. Y. 887). In the cited case the balance for distribution (prior to estate tax payment) was sufficient to set up all of the trusts and to pay all of the outright legacies directed by the will. The will there in question said: " I direct that, with regard to the various bequests and trust funds hereinbefore set forth, my Executors set aside the various sums necessary for such purpose seriatim and in the order in which I have mentioned the same, and that my said Executors — should there be a deficiency of assets — continue setting aside and paying such funds until the corpus of my estate, after deducting all expenses in connection therewith, shall have been exhausted, and, when that point has been reached, any trust fund or legacy thereafter provided for in this, my Will, shall lapse and become null and void and of no effect." The scheme of priority there directed was even more explicit than in the will here for construction. So much of the quoted text as refers to the deduction of " all expenses " in connection with legacies was held not to bar the application of the equitable rule of allocation found in section 124 of Decedent Estate Law. If attempt be made to say that the will in the cited case differs from the will here under construction because here there is a direction for paying taxes out of the residuary the answer is furnished by *Matter of Caswell* (*supra*), which held inoperative a direction to pay taxes out of a non-existent residuary. The point in the *Stanfield* case is that a preference in payment merely is not also a dispensation from tax.

The court holds that the preferred legacies are to be tentatively set up in full and the benefits to the general legatees tentatively computed so that they share *pro rata* in the balance left after the preferred legacies are tentatively set up and the income charge hereinafter discussed is provided for. Then the estate taxes are to be prorated among all legatees, both preferred and general, in the proportions established by this tentative schedule of benefits.

The fifth question concerns itself with the source of income directed by the will to be paid to the preferred trust beneficiaries during the first year of administration. Here is the text in controversy: "I direct that the payment of income hereinabove provided for shall not await the setting apart of funds in satisfaction of the foregoing dispositions but shall begin at the end of the first quarter after my death, and shall, for the first year after my death, be made at the rate of four and one-half per cent ($4\frac{1}{2}\%$) per annum on the amounts hereinabove named as the amounts of the principal of said trust funds respectively. In the event that my net estate should, for any reason, not prove sufficient to completely establish the trust funds hereinabove provided for, then I direct that any sums thus paid during the first year after my death for income account, as hereinabove directed, may be charged to the principal of said trust funds respectively to the extent to which any income accrued, earned and received on my entire estate after my death shall be insufficient to liquidate said income payments." The estate assets as a whole did not earn sufficient income during the first year of administration to pay four and one-half per cent to the beneficiaries of the preferred trusts. The preferred legatees argue that since the estate assets permit the complete establishment of the trust funds the direction in the quoted text for a charge of the deficit in income to the principal of the respective trusts is not operative. They ask that the fund otherwise available to the general legatees be used to make up the deficit in income which is said to approximate $12,000. This procedure, if approved, will diminish substantially the fund available for payment to the general legatees. The first quoted sentence makes the rate of income directed to be paid a charge on the whole income of the estate and a charge as well on the whole principal of the estate so far as income was found insufficient. This is made clear by the tenor of the second quoted sentence. There the testator clearly had in mind that if the trust funds could not be set up in full there was no source from which payment of the excess income burden could be met except the principals of the trust funds themselves. It was only then that resort could be had to the trusts. The whole text quoted permits a charge upon the trust fund principals only in an event which has not happened in this estate. So, it is necessary to hold that the deficiency is chargeable to the fund otherwise available to the general legatees. The payment of income at this rate is to be treated as if earned and so the amount payable is subject to the deduction of commissions thereon.

The final question has to do with the fixation of the fee of the attorney for the accounting party. There is no objection to the fee requested. The court finds that it is moderate and allows it as requested.

Submit, on notice, decree construing the will and settling the account accordingly.