In the Matter of the Estate of GEORGE BLUMENTHAL, Deceased.

Surrogate's Court, New York County, June 29, 1943.

*Howard Lehman, Joseph Solomon, Leo Gottlieb* and *John L. Gray, Jr.,* for Carl J. Schmidlapp and another, as executors, petitioners.

*Charles E. Hughes, Jr.,* and *Cornelius C. Webster* for Mount Sinai Hospital of the City of New York and others, respondents.

*Thomas W. Kelly* for Henry Blumenthal and another, respondents.

*Leon Schaefler* and *Shirley Kravchivk* for Fifth Avenue Bank of New York, as trustee, respondent.

*Henry Epstein, Wolfgang S. Schwabacher* and *Jack Perlman* for Yvonne Barbier and others, respondents.

*Hugh J. O'Rourke* for Mary Gregory, respondent.

*Frederick Sheffield, Henry Cassorte Smith* and *Robert P. Lynn* for Mary A. Blumenthal and another, respondents.

*James L. Duncanson,* attorney designated by Alien Property Custodian to represent Count Stanislas de Castellane, Countess Nathalie de Castellane and others, persons in enemy-occupied territory.

*Jacob Florea,* special guardian for Ann Gilbert.

*Laurence D. Kieran,* special guardian for Hans Loewenthal.

FOLEY, S. In this proceeding the executors apply for the construction of the will and for instructions as to the method of charging the Federal and State estate taxes. The issues are simple. They have been magnified in great part by the large amounts involved.

Two questions are presented for determination in this decision. Other subordinate questions have been raised which have been reserved for subsequent determination.

The questions as set forth in the petition with which we are presently concerned are:

I. Does the will of the decedent contain a direction that estate taxes imposed with respect to the property passing under the will are to be paid out of the residue of his estate, or must such estate taxes be apportioned among the legatees in accordance with section 124 of the Decedent Estate Law?

II. Does the will of the decedent contain a direction that estate taxes imposed with respect to certain gifts made by the decedent during his life, which may be held taxable as a part of his estate because made in contemplation of death, are to be paid out of the residue of his estate, or must such estate taxes be apportioned among the donees of such gifts in accordance with section 124?

Mr. Blumenthal died on June 26, 1941. The Federal estate tax return showed a gross estate of slightly more than $9,000,000. The Federal estate taxes thus far paid amount to $2,210,105.47. A preliminary payment of $650,000 has been made on account of the estate taxes due the State of New York. Thus the total taxes already paid approximate the sum of $2,860,000.

Mr. Blumenthal under his will made various pecuniary gifts outright or by way of annuity or legal life estate or of trust income and principal to his widow, blood relations, employees and friends. Other legacies were given to charities. One of them was the Metropolitan Museum of Art of which he had been

president. The residue was given in varying percentages to his widow, to certain of his relations and to charities.

Under the provisions of section 124 of the Decedent Estate Law, Federal and State estate taxes must " be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." There is contained in it a provision that such proration shall apply " except in a case where a testator otherwise directs in his will."

The will of Mr. Blumenthal is divided into two parts. The first part dealt specifically with the administration of his property in France. The second part dealt with the administration of his property located elsewhere, including the assets now in process of administration in this court. It contained his plan for the distribution of all of his property.

In his disposition of his French property he directed that the taxes assessed in France should be paid out of the proceeds of that property.

However, it is extremely significant that in the second part of his will there is not the slightest mention of the word " taxes ", nor any direction whatsoever as to the source from which such estate taxes should be paid. In the absence of any express direction to the contrary, the provisions of section 124 thus became operative and an allocation proportionate to the benefits derived by the persons interested, both by the testamentary plan and by gifts made *inter vivos,* becomes necessary.

In order to escape the plain effect of the statute, the widow and certain other beneficiaries who argue against an apportionment attempt to extract from the provisions of the will an indication of intent on the part of the testator to pay certain legacies exempt from tax or to charge all of the taxes out of the general estate or residue. These arguments take various forms. They rest upon the nature of a single gift of relatively small value of an article of jewelry to a friend, and bequests to the executors which, although not specifically characterized in the will as in lieu of commissions, may have been given for that purpose since it is stated in the instrument that the executors had expressed the desire that they receive no compensation or commissions.

It is also urged that paragraph twenty-eighth of the will indicates a purpose on the part of the testator that the pecuniary legacies be exempted from taxes by the direction in that paragraph that they be paid in full in the numerical order in which they appeared in the will in the event that the estate was insufficient to pay all of such legacies.

The principal supporter of the last-named argument is the widow who was granted priority numerically in a legacy of $1,500,000. That legacy was subordinated only to pecuniary provisions for his employees. She was also the beneficiary of fifty-four per cent of the residue. She appeared as *amicus curiae* in the United States Supreme Court on the appeal in *Matter of del Drago,* plainly seeking to avoid the payment of any taxes on her pecuniary legacy in the pending estate. She there joined with those contending for a determination that section 124 of the Decedent Estate Law was unconstitutional. In that attempt she was unsuccessful. (*Riggs* v. *Del Drago,* 317 U. S. 95, revg. *Matter of del Drago,* 287 N. Y. 61, and affg. 175 Misc. 989.) Having failed in that effort she now contends for a construction which would nullify the operation of the section by procuring a determination which would distort and pervert the testamentary intent.

All of the contentions against proration of the taxes are overruled. The Surrogate finds no direction in the will, expressed or by implication, which indicates in the slightest degree that the terms of section 124 were not to apply or that all of the beneficiaries, both testamentary and *inter vivos,* were not to bear their respective shares of the impact of the taxes.

In the construction of that section the courts have uniformly held that the expression of an intent against apportionment must be reasonably clear. (*Matter of Duryea,* 277 N. Y. 310; *Matter of Kalik,* 179 Misc. 872; *Matter of McManamy,* 172 Misc. 392; *Matter of Walbridge,* 170 Misc. 127; *Matter of Kaufman,* 170 Misc. 436.) In the absence of specific words directing nonapportionment, strong showing must be made " that an intent to effect an inequitable apportionment is clearly disclosed in the will. Language of doubtful import — that is, language which is subject to interpretation either way — will not suffice to change the rule of apportionment commanded by the statute." (DELEHANTY, S., *Matter of Kaufman, supra.*) The Legislature had said in effect to every testator, the rule of apportionment shall apply unless you show clearly in your will that you do not wish it to apply. Where the will is silent, as here, an intent to apportion under the statutory plan is read into the mind of the testator and into the instrument which he has executed. Thus a presumption is created in favor of allocation of the taxes unless those that oppose it can point to the context of the will as expressly negativing an apportionment. Cases have arisen where the terms of the will clearly show the purpose of the testator in exempting legacies or other transfers from a share

of the taxes. However, in these cases the intent was clearly expressed in the language of the will.

Typical of these cases is *Matter of Caswell* (239 App. Div. 695), which is cited here by those who oppose an apportionment of taxes. In *Matter of Caswell* there was a general direction to pay the taxes out of the residue. There was no residue. There was also a direction that certain of the pecuniary legacies should not be subject to the burden of a share of the taxes. There were additional provisions in favor of certain preferred legacies which lifted them above the general group of pecuniary legacies. There the testatrix expressly directed that the bequest to her servants be paid in full and within one month after the probate of the will " without any deduction therefrom on account of any transfer or inheritance or other taxes  *  *  *, and whether or not my estate shall be sufficient to pay in full all the legacies by me bequeathed."

The language thus construed as affording an expression of exemption as to these preferred legacies is clearly distinguishable from the terms of the present will wherein no direction or even mention is made as to taxes. That decision, therefore, is without relevancy. Nor has my recent decision in *Matter of James* (180 Misc. 441) any pertinency because of the explicit language of the will there, which was held to exonerate certain legacies from taxes.

It is not difficult to anticipate the results which will flow, where the will is silent as to taxes, from attempts by highly technical and tenuous arguments to distort the intent of the testator. Inevitably there will be a whittling away of the beneficial and equitable results contemplated by section 124. (For these purposes see statement of the Decedent Estate Commission and explanatory legislative note to the section in Combined Reports of the Decedent Estate Commission [Reprint ed.], pages 309, 338 and 339.) Many arguments, such as have been made here, will be addressed to the sympathy of the court in favor of freeing a legacy to a servant from a share of the tax, or exonerating a specific bequest of jewelry or other personal property, or a legacy to a special object of bounty. Thus, favor, caprice or whim will be substituted for uniform rules and stability. The necessary result of attempts to distort the testamentary purpose, where taxes are not even mentioned, will be that each case will be treated *sui generis* and the courts, having turned their backs upon the plain terms of the statute, will be urged to catch at the slightest straw with which to frame a guess. Such a scheme should receive no encouragement in the face of the man-

date of the Legislature that proration must be applied unless the testator has clearly expressed a contrary direction.

The contentions referred to above, made by the widow and others who seek exemption from tax based upon the terms of paragraph twenty-eighth of the will, have been the subjects of adverse determinations in two recent cases. (*Matter of Stanfield,* 170 Misc. 447, affd. 257 App. Div. 932; *Matter of Halsted,* 174 Misc. 292, affd. 261 App. Div. 892.) Primarily the provisions of that paragraph are unimportant because they have actually no application to the present situation. They read: " In the event that from any cause my estate shall at the time of my death be insufficient for the payment in full of all the money legacies in this my will contained, then and in that event I direct that the said legacies shall be paid in full in the numerical order in which they appear in this my will to the extent that my estate shall be sufficient to pay the same." In it the testator contemplated an insufficiency of assets which has not occurred. There is an ample surplus in the residue above the total of all of the general legacies.

In *Matter of Halsted* (174 Misc. 292, affd. 261 App. Div. 892, *supra*), certain legacies were declared in the will to be entitled to priority of payment. It was there stated by Surrogate DELEHANTY that the mere fact that legacies are declared to be preferred does not mean that they escape a contribution to the estate taxes. In that decision reliance was placed upon his conclusion reached in *Matter of Stanfield* (170 Misc. 447, affd. 257 App. Div. 932, *supra*). In the *Stanfield* case the provision in the will relied upon in favor of nonapportionment is quite similar to that contained in paragraph twenty-eighth of Mr. Blumenthal's will. It reads: " I direct that, with regard to the various bequests and trust funds hereinbefore set forth, my Executors set aside the various sums necessary for such purpose *seriatim* and in the order in which I have mentioned the same, and that my said Executors — should there be a deficiency of assets — continue setting aside and paying such funds until the corpus of my estate, after deducting all expenses in connection therewith, shall have been exhausted, and, when that point has been reached, any trust fund or legacy thereafter provided for in this, my Will, shall lapse and become null and void and of no effect." The will was silent as to estate taxes.

The Surrogate held that a direction for a preference in payment was not a dispensation of the legacy from its share of the taxes. Both *Matter of Stanfield* and *Matter of Halsted* were affirmed without opinion by the Appellate Division. In *Matter*

*of Stanfield,* leave to appeal was denied by the Court of Appeals (281 N. Y. 887).

The language involved in the present will cannot be distinguished from that involved in *Matter of Stanfield.* The argument that the inclusion of the direction for the payment of the pecuniary legacies " in full " was a stipulation against apportionment is without merit. Although the will in *Matter of Stanfield* did not contain these exact words it plainly contemplated a direction to pay in full in the numerical order of the list of legatees

There is an important statement made in the minority opinion of the Court of Appeals in *Matter of del Drago* (287 N. Y. 80; *supra*) which closely fits the facts in the pending proceeding. It will be recalled that the decision of the minority was sustained unanimously by the United States Supreme Court. The will of the testatrix there was silent as to the source of the payment of the estate taxes. An equitable apportionment was decreed by my decision. The relevant part of Judge DESMOND's opinion in the Court of Appeals reads: " The will here, carefully drawn and disposing of a large estate, was made in 1934, four years after section 124 went into effect. Testatrix and her advisers are presumed to have known and must have known that, by the terms of section 124, she could, by inserting a few words in her will, forbid apportionment of the estate taxes and command their payment from the residue. *She chose not to do so. We should not do it for her.*" (Emphasis supplied.)

That statement applies with exactitude here. Mr. Blumenthal was a keen, shrewd businessman. His will shows meticulous and careful preparation. In its draftsmanship he had the advice of attorneys of long experience in estates. His will was executed on January 9, 1941. The three codicils were dated respectively January 9, 1941, April 10, 1941, and May 31, 1941. In each of the codicils he ratified and republished his will. Ten years had passed since the enactment of section 124. In not one of these instruments did he mention the source of the payment of the Federal and State estate taxes as applying to the property being administered here. In none of them did he even imply that any legacy or benefit was to be exempt from tax. It is not within the power of the court to supply a direction against apportionment which he did not write into his will and codicils. On the other hand, to him must be attributed a willful omission of any direction against apportionment with a deliberate purpose that section 124 would apply and an apportionment would be made pursuant to its terms.

All the estate taxes must be prorated equitably against the testamentary beneficiaries other than the charities and against the donees by *inter vivos* transfers.

[Other directions included in the original decision of the Surrogate omitted because of their subordinate importance.]

If the parties desire to submit an intermediate decree upon the questions disposed of by the Surrogate in this decision, they are granted permission to do so upon notice.