137 So.2d 587 (1962)
In re ESTATE of Adele Hart BARRET, Deceased.
Nos. C-360, C-361.
District Court of Appeal of Florida. First District.
January 23, 1962.
Rehearing Denied February 22, 1962.
*588 Willard Howatt, St. Augustine, and Bedell, Bedell & Dittmar, Jacksonville, for Mary L. Hart and John A. Hart, Jr.
Dunham & Bennett, St. Augustine, and Lewis, MacDonald & Varian, New York City, for Mary Hart Oliver.
STURGIS, Judge.
This appeal concerns two orders of the County Judge's Court of St. Johns County, entered in the matter of the Estate of Adele Hart Barret, deceased, and relating to the same subject matter. The appellant executors of said estate, hereinafter referred to as the relators, seek reversal of an order which we construe as holding to the effect that certain corporate stock purported to have been issued to and jointly owned by the decedent and her niece, Mary H. Oliver, hereinafter called the respondent, with right of survivorship, was in fact so owned and is not liable for any part of the expenses of administration or of the federal and state inheritance or estate taxes which may be levied upon decedent's gross estate. The respondent niece (appellee and cross-appellant) seeks reversal of a separate order denying her petition to have the probate court fix and require the executors of said estate to pay to respondent's attorney of record a reasonable fee for the services performed by him in and about the proceedings resulting in the first mentioned order. The relators, Mary L. Hart and John A. Hart  executors of the will of Mrs. Barret, deceased  are the mother and brother, respectively, of the respondent, Mrs. Oliver. Mrs. Hart is a sister-in-law of Mrs. Barret.
In 1951 Mrs. Barret, who died in 1959, made gifts of approximately the same value to her niece, Mrs. Oliver, and nephew, Mr. Hart. The gift to Mr. Hart was made outright while that to Mrs. Oliver was made by causing certain corporate stock owned by her or purchased with her funds to be issued jointly to herself and Mrs. Oliver and thereafter so held and owned, with right of survivorship; subject, however, to instructions given by Mrs. Barret to the issuing corporations at the time the joint tenancy was created whereby she retained certain interests therein during her lifetime that were not enjoyed by Mrs. *589 Oliver. The subject stock had doubled in market value between the date of issue and the date of Mrs. Barret's death.
In May of 1958 Mrs. Barret executed her will containing the following provision (Paragraph XVII):
"It is my will, and I do so direct, that all costs of administration of my estate, and any federal and state inheritance or estate taxes, shall be borne pro rata by my entire estate, except that none of the property given and bequeathed under Paragraph hereof designated XII [relates to effects of the person, objects of art, silverware, bric-a-brac, portraits, and an automobile] shall be charged with any part of such expenses or other charges."
The will was admitted to probate on March 26, 1959. Upon qualifying as executors, the relators delivered the subject stocks to Mrs. Oliver. On April 29, 1960, the relators, in their relation as executors of said will and also in their individual capacities as residuary legatees and devisees thereunder, filed a petition in the court of probate to have the quoted provision of the will construed, and in that behalf asserted that by said provision the respondent, Mrs. Oliver, is required to pay a share of the expenses of administration, state inheritance taxes and federal estate taxes, based on the proportionate value of said jointly owned stock to the value of the gross taxable estate of the decedent. The value of the stock is approximately 14.55% of the gross taxable estate. The petition alleges and it is not disputed that said stocks were held by the decedent and the respondent "as joint tenants, with the right of survivorship, and not as tenants in common."
The respondent moved to dismiss the petition on the ground that Section 734.041, Florida Statutes 1959, F.S.A.,[1] requires the mentioned expenses and taxes to be paid from the residuary estate of the testator. She also filed an answer resisting the construction and effect which the relators sought to have upon the will, and therein moved the court to fix and require decedent's estate to pay a reasonable fee for the services by her attorneys in the premises.
In disposing of the petition the court first entered the order challenged by the relators, in which it was found:
"* * * that Section 734.041, Florida Statutes directing the procedure to be followed by the Personal Representative in paying all estate, inheritance, succession and death taxes, imposed upon the estate of a decedent does not apply in the estate of Adele Hart Barret, deceased because the decedent in Paragraph XVII of her Last Will and Testament provided therefor; and * * * that the language of said paragraph of said Last Will and Testament is not ambiguous and that the meaning thereof is clear, when considered in the light of the generally accepted language used when speaking of inheritance, succession and death taxes imposed upon the Estate of a decedent * * *."
The executors of Mrs. Barret's will (the relators herein) were thereupon ordered to *590 pay all costs of administration of the Barret estate and any federal and state inheritance or estate taxes levied thereon from the entire estate coming into their hands to be administered, except certain property given and bequeathed under provisions of the will with which we are not concerned.
Thereafter an order was entered denying respondent's motion for the imposition of a reasonable attorney's fee, to be paid out of the funds of the estate, for the services of respondent's attorney in said proceedings, and this action forms the basis for the separate appeal by Mrs. Oliver, which the parties in this court treat as being in the nature of a cross-assignment of error.
The points of law involved may be stated thus:
(1) Whether Section 734.041, Florida Statutes 1959, F.S.A. (see footnote 1) affords the testator a means by which to require the owner of property passing outside the will to contribute ratably toward the payment of taxes imposed upon and the expense of administration upon testator's estate?
(2) Whether the subject corporate stock in the hands of the respondent, Mrs. Oliver, is to be treated as part of the Barret estate and as such charged with a proportionate share of the taxes imposed upon said estate and the costs of administration?
(3) Whether the court of probate erred in denying Mrs. Oliver's motion concerning the payment by the Barret estate of a fee for the services performed by Mrs. Oliver's attorney in this proceeding?
We have determined that the first and second points must be resolved in the negative and that the third point must be resolved in the affirmative. It follows, therefore, that the order challenged by the relators must be affirmed and the order challenged by the respondent must be reversed with directions.
For the purpose of this discussion it is conceded, as relators state, that inclusion of the subject stocks in decedent's gross estate for tax purposes increases by approximately $30,000 the amount of tax payable; further, that the taxable value of said stocks is approximately the same as the value of a share in the Barret estate which passes under the will to one of the beneficiaries, Mrs. Mary Hart, who is also one of the relator-executors of the will, and that unless the respondent is required to contribute ratably to the payment of said taxes and expenses of administration according to the proportion which the value of the stock bears to the gross estate for federal tax purposes, Mrs. Hart's share in the estate will necessarily bear approximately 50% of such taxes and expenses. We fail to perceive, however, what effect these circumstances have upon the construction to be given to the quoted provision of the will. It is elemental that as between several beneficiaries of a will, disparity alone in the value of the share received by each does not afford a basis for a special construction to be placed upon a provision of the nature in suit. The rule is more obvious when applied to a disparity between the value of property passing under the will as compared to that which passes outside its purview. The latter, in the absence of overriding statutory provisions, may not be subjected to debts of the estate, howsoever arising.
The relators, relying on Section 734.041, Florida Statutes 1959, F.S.A. (footnote 1), contend that the maker of a will is thereby authorized to require that such part of the non-probate estate as is subject to estate tax shall bear a prorata share thereof. They also contend that independent of the statute a testator may require the expenses of administration upon his estate to be paid out of non-probate assets, but cite no authority for this proposition or specific provision of the will in suit having that intendment; apparently resting this contention on the theory that a codicil to the will raises the implication that the testatrix intended the costs of administration to be paid in whole or in part out of the non-probate corporate stock which *591 passed to the respondent by the 1951 inter vivos gift. The statute does not have the contended effect and relators' position regarding payment of the costs of administration is also unsound. It is true that a codicil to the will liberalized and broadened provisions for the benefit of Mrs. Hart and expressed testatrix's devotion to her; but assuming arguendo that testatrix had power by will to subject respondent's stock to obligations of the estate (a position to which we do not subscribe), the fact remains that there is nothing in the will or codicil more concrete than the mentioned factors on which to found an intent of the testatrix to have the stock that passed to Mrs. Oliver outside the will bear any part of the estate taxes or expenses of administration. That predicate is too indefinite to serve such purpose.
Absent a contrary testamentary disposition, Section 734.041, Florida Statutes 1959, F.S.A. (footnote 1), requires tax obligations of the estate to be paid out of the residuary estate. It affords a testator the right to require the payment of such obligations from sources other than out of the residuary estate, but significantly omits any reference to non-probate assets as a source out of which to make payment. This omission, coupled with the unambiguous language of the statute, compels the conclusion that it was the legislative intent to exclude non-probate assets from the testator's control and that the power to charge property with such burden exists only with respect to such as passes directly under the will.
The corporate stock here involved was jointly owned by the respondent and Mrs. Barret, with right of survivorship. Mrs. Barret was powerless, without the consent of her cotenant, to require by will that the corpus of the gift represented by respondent's interest in the stock be invaded for the purpose of paying estate taxes, or for any other purpose. The principle here involved is cogently stated in the recent case of Warfield v. Merchants National Bank of Boston (1958), 337 Mass. 14, 147 N.E.2d 809, in which an effort was made to subject the corpus of trust property passing outside a will to the payment of estate taxes attributable to the trust. The court said:
"We are unable to find a basis in reason or in our decisions for recognizing a right in the executor, apart from statute, to enforce against the trustee an intent of the donor of the trust, expressed by will alone that the tax be paid by the trustee. No obligation having been created by statute to contribute to the tax, what the trustee is to do with the property is determined by the trust instrument and any instrument which lawfully amends its terms. The will, unless it conforms to the requirements of the trust * * * for amendment, is as inoperative upon the trust as is every other nonconforming expression of the donor's wishes, however informal * * * the donor has retained only enough interest to make a determination if it is done by an act which operates to amend the trust in the way provided therein. We deem it irrelevant that the sovereign having jurisdiction may take the tax due it from the trust property if there is no other property available to pay it. In such cases an applicable law imposes the tax." (Emphasis supplied.)
In the early case of Duncan v. Forrer, 6 Binn., Pa., 192 [193], it was contended that a statute making wills a valid means of conveying property operated to destroy the right of a surviving joint tenant. The court held:
"When a will takes effect, it operates as a species of conveyance; but a conveyance which does not take effect till after the death of the testator. But the rule of law being fixed, that at the instant of death the right of survivorship attaches, in preference to the will, the act of assembly does not embrace the case."
*592 In Klajbor v. Klajbor, 406 Ill. 513, 94 N.E.2d 502, at p. 504, the court said:
"It is elementary that where property is held in joint tenancy the joint tenant first dying has no interest which can be conveyed, the title of the coproprietor by survivorship taking precedence over the claim of a devisee or legatee, heir or administrator, as the case may be."
Another succinct statement of this rule is found in Wilken v. Young, 144 Ind. 1, 41 N.E. 68, at p. 70:
"* * * as this paramount right of the survivor, or survivors instantly prevails upon the death of the testator, there remains no estate of inheritance upon which the will can operate."
Once a joint tenancy comes into being, it can be severed only during the lives of the joint tenants. The right of survivorship persists and upon the death of one of the joint tenants, the survivor takes the whole estate. A joint tenant cannot by will defeat his cotenant's right of survivorship of the whole. Dimock v. Corwin (C.A. 2), 99 F.2d 799, 801. See also Green v. Skinner, 185 Cal. 435, 197 P. 60; Bird v. Stein (D.C.Miss.), 102 F. Supp. 399, rev'd on other grounds (C.A. 5), 204 F.2d 122, rehearing denied 205 F.2d 512; Re Sutter's Estate, 138 Misc. 85, 245 N.Y.S. 636, aff'd Re Suter's Estate, 258 N.Y. 104, 179 N.E. 310; Re Hoffman's Estate, 175 Misc. 607, 25 N.Y.S.2d 339; Bassler v. Rewodlinski, 130 Wis. 26, 109 N.W. 1032, 7 L.R.A.,N.S., 701; 48 C.J.S. Joint Tenancy § 4, p. 928.
It will be seen that Paragraph XVII of Mrs. Barret's will, supra, groups together "all costs of administration of my estate, federal and state inheritance taxes," indicating an intention that expenses of administration and estate taxes be treated alike. Where expenses and taxes are grouped together in such clauses of a will, it is generally held that they are payable out of the same source. See In re Hund's Will, 266 App.Div. 379, 42 N.Y.S.2d 505. Even if the statutory or case law of this state permitted a testator to require that any part of the estate tax attributable to an inter vivos gift be paid from the property of such gift, the will in suit does not so provide or imply. The words "my entire estate" as used in said Paragraph XVII must be construed as having reference to "all the property passing under this Will" and not to the corporate stocks transferred by testatrix to joint ownership with the respondent, with right of survivorship, long prior to death. The terms "my estate" and "my entire estate", as used in Paragraph XVII, in the usual connotation has reference only to that property over which the testatrix had a testamentary power of disposition, and there is nothing in the will or codicil to invest them with a different meaning.
Relators place emphasis on the case of Hagerty v. Hagerty (Fla. 1951), 52 So.2d 432, in which our Supreme Court, citing Henderson v. Usher (1936), 125 Fla. 709, 170 So. 846, with approval, directed that state taxes be apportioned among nontestamentary assets. In so holding, the court applied the then existing statute (Section 734.041, Florida Statutes 1949) which was amended by Chapter 57-87, Laws of Florida, Acts 1957, to read as at present. See Footnote 1 of this opinion. As in force at the time the Hagerty case was decided, the statute had reference to "any property required to be included in the gross estate of a decedent" under the provisions of the tax laws of the state or under the provisions of any United States Revenue Act, and specifically provided for equitable proration of death taxes among "the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." It defined the term "persons interested in the estate" to mean "all persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest." It may be that had the *593 statute in that form remained in force, the owner of the corporate stock with which we are presently concerned would have been accountable for a prorata share of such taxes; but such is not the case. A casual examination of amended F.S. § 734.041, F.S.A., which governs the issue on this appeal, reveals that the power to require such apportionment from the non-probate estate has been completely removed.
A comprehensive treatment of the change in the statute is found in XII Florida Law Review 50. Inequities, if any, under the present statute must be removed by act of the legislature rather than judicial fiat. A testator who, within the orbit of F.S. 1959, § 734.041, F.S.A., desires to direct the manner in which the burden of estate taxes shall come to rest, must do so, if the application of the statute is to be avoided, in unequivocal terms and in such manner as will clearly show his intent. See In re Blumenthal's Estate, 180 Misc. 895, 42 N.Y.S.2d 898 (Surr.Ct. 1943).
Turning now to the order denying respondent's motion for allowance of a fee to be paid out of the Barret estate for the services of her attorney in these proceedings, it is evident that the entire thrust on the part of the relators (executors) and their counsel of record, both here and in the court of probate, has been to impose upon the respondent a burden contrary to law, and one which, had their position been sustained, would have resulted in a substantial reduction in the inheritance which Mrs. Oliver, who with the relators is a beneficiary of Mrs. Barret's will, would have received thereunder. Under these circumstances, it can hardly be contested that the legal services rendered by counsel for Mrs. Oliver, the respondent, tended to benefit the estate of Mrs. Barret in that without such services it is quite possible that her testamentary intention would not have been carried out. The applicable principle and rule is stated in Johnson v. Burleson (Fla. 1952), 61 So.2d 170, 173:
"The only purpose of probating a will and for the existence of an executor is to carry out the purpose and intent of the testator as expressed in his last will. When it appears that the executor by the adoption of methods of accounting or reporting or otherwise is about to defeat the purpose and intention of the testator, the services of an attorney may be very necessary to aid the County Judge in arriving at the correct conclusion and issue proper orders requiring the executor to carry out the purpose and intention of the testator.
* * * * * *
"* * * Had the theories of the surviving executor of Mr. Wartmann's will prevailed, the intention of Mr. Wartmann, as expressed in his will, would have been defeated. In order to carry out the purpose and intention expressed in the will of Mr. Wartmann, the services of an attorney were necessary, to aid the County Judge in arriving at the correct conclusions and issuing proper orders to carry out this intention. These services were of value to the estate, and the Circuit Judge correctly remanded the case to the County Judge on this question for the purpose of finding, fixing and ordering a reasonable attorney's fee for the services rendered to the estate of E.L. Wartmann."
Adhering thereto, we hold that the court erred in denying respondent's motion in this cause. We deem it appropriate to say that our conclusion on this issue of the appeal is not to be construed as in any manner impugning the motives or propriety of the relators and their counsel in prosecuting these proceedings which presented fairly debatable questions of law.
Appellants have lodged in this court a motion to remand this cause to the trial court with directions to clarify the order appealed by the relators, based on the ground that the order is indefinite and its meaning *594 obscure. The briefs and argument of counsel indicate a clear understanding of the effect of the order and we have no difficulty in construing it as having the effect announced at the commencement of this opinion. The motion is therefore denied and the order is affirmed.
The order appealed by the respondent is reversed, with directions that the trial court ascertain the reasonable amount to be allowed for the services rendered herein on behalf of the estate of the decedent, Mrs. Barret, by counsel representing the position asserted by the respondent appellee, Mrs. Oliver, and to thereupon enter an order requiring the same to be paid out of the assets of the estate of said decedent.
Affirmed in part, reversed in part.
CARROLL, DONALD K., Chief Judge, and WIGGINTON, J., concur.

On Petition for Rehearing
PER CURIAM.
We consider a petition for rehearing filed by the executors of the Barret estate as appellants in Case No. C-360 and as appellees in Case No. C-361.
The first ground of the petition suggests that in construing the order of the County Judge's Court in Case No. C-360 "as holding to the effect that certain corporate stock purported to have been issued to and jointly owned by the decedent and her niece * * *, with right of survivorship, was in fact so owned", this court overlooked and failed to consider that the county judge did not purport to hold that said stock "was in fact so owned" or, indeed, to pass on that issue. In so construing the order this court simply accepted, as it was incumbent on the probate court to do in reaching the conclusion stated by said order, the uncontested premise upon which the executors' "Petition for Order Construing Will" was based, the same being stated by Paragraph 4 of said petition as follows:
"4. That the following assets of said estate, as shown by Schedule E, were held by Adele Hart Barret and Mary Hart Oliver as joint tenants, with the right of survivorship, and not as tenants in common: [List of stocks]".
Thus the vital issue before the probate court, as here, was whether or not the stocks so owned were to be treated as part of the Barret estate and as such charged with a proportionate share of the taxes imposed upon said estate and the costs of administration. Implicit in the subject order is a finding, in accordance with the affirmative and accepted allegations of the executors' petition, that the subject stocks "were held by Adele Hart Barret and Mary Hart Oliver as joint tenants, with the right of survivorship, and not as tenants in common * * *." The mentioned ground of the petition for rehearing is clearly without merit.
Said petition for rehearing also suggests that our decision as to Case No. C-360 was based on a recitation of fact stated in appellee's brief, which is not supported by evidence in the record on appeal, said statement being to the effect that in 1951 the decedent made gifts to her niece and nephew in approximately the same amount, the gift to the nephew being made outright while that to the niece was made by the transfer of the subject stocks to joint ownership. We acknowledge that the record on appeal does not contain evidence that testatrix made a gift to her nephew in 1951. Technically, therefore, the opinion should not have so stated. We think it appropriate, however, to point out that appellant-executors' reply brief did not refute or challenge the accuracy of the statement contained in appellee's brief, that it was not challenged when the appeal was orally argued on the merits, and that the petition for rehearing does not dispute the accuracy of the statement. While these observations may at first blush appear to beg the point, it must be remembered that the fundamental purpose of briefs and appendices *595 in appellate practice is to acquaint the reviewer with the material facts, the points of law involved, and the arguments supporting the positions of the respective parties, and that one purpose of Florida Appellate Rule 3.7, subd. h, 31 F.S.A., is to afford the appellant an opportunity by the reply brief to correct any error posed by appellee's brief. The failure of appellants' reply brief to alert this court to the mentioned fault of appellee's brief can be rationalized only on the assumption that the pleader did not deem the subject to have any material bearing on the issues before this court, which are confined to points of law based on undisputed facts. Under those issues the subject statement was not only immaterial to the result but could not and did not serve as a basis for our decision, hence said ground of the petition for rehearing is without merit. Other grounds of said petition have been carefully considered and are likewise found to be without merit.
The petition for rehearing is denied.
CARROLL, DONALD K., Chief Judge, and STURGIS and WIGGINTON, JJ., concur.
NOTES
[1] § 734.041, F.S. 1959, F.S.A., provides:

"Payment of federal and state estate and death taxes. (1) All estate, inheritance, succession and death taxes imposed upon the estate of a decedent and required to be paid by the personal representative, shall be paid from the residuary estate of the testator, without requiring contribution from any person receiving property taxable as a part of the estate of the testator. In the event there is no residuary estate or if such residuary estate is insufficient for the payment of such taxes, the property of the testator passing under the provisions of his will shall be used for the payment of such taxes in the order specified in § 734.05. Nothing in this statute shall prohibit a testator from directing in his will that said taxes be apportioned or paid in a manner other than as provided in this section. This section as amended by Laws 1957, c. 57-87 shall be applicable only to estates of decedents dying after May 13, 1957."