In the Matter of the Estate of ALFRED C. HOFFMAN, Deceased.

Surrogate's Court, Queens County. December 30, 1940.

*William J. Wilson,* for Mary Hoffman, as executrix, etc.

*Joseph P. Rudden* [*John E. Cameron* of counsel], for the Springfield Gardens National Bank of New York, claimant and objectant.

HETHERINGTON, S. On January 9, 1939, Alfred C. Hoffman borrowed $2,000 from the Springfield Gardens National Bank of New York and on February 7, 1939, an additional sum of $2,500. On each occasion he executed a collateral note, payable ninety days thereafter. The collateral mentioned in the notes and deposited with the bank, consisted of a savings bank book, which was headed "in acct. with Mary Hoffman and/or Alfred C. Hoffman," and written orders on the account for the sums borrowed. A payment of $1,500 was made on account of the first loan, and a renewal note for the balance was given, under date of April 10, 1939, maturing in a like period and similarly secured as the prior notes. Prompt notice of the loans was given to the savings bank. Hoffman died before any of the notes fell due. In his will, which has been admitted to probate, he named his wife sole legatee and executrix. His estate appears, from the account filed by her, to be insufficient to pay administration and funeral expenses. The savings account is not mentioned in the account. The bank has objected to its non-inclusion, and asserts a lien thereon and a right to resort thereto for payment of the notes. The executrix asserts that the savings account was a joint account and, as such, formed no part of the decedent's estate, and that she became entitled to the balance of $5,002.50 on deposit, at the time of her husband's death, as surviving joint tenant, free of any claim or interest on the part of the bank.

The objector urges that the account was not a joint account. This contention is overruled. Whatever doubt may arise as to the intention of the decedent and his wife to open a joint account, by reason of the form in which the book was made out, as above stated, is removed by their joint written request made to the bank, concurrently with its creation, in which they expressly state their desire to open an account "payable to either of us, or to the survivor," and the signature card, signed by them, which had stamped thereon a notation to the effect that the account was joint and payable, in case of death, to the survivor. In the light of their written declarations of intention, the heading on the book, presumably written by another, is not controlling. A statutory joint account with right of survivorship was created. (*Matter of Fenelon,* 262 N. Y. 308.)

The wife, as survivor, became entitled, upon the death of her husband, to the balance in the account (*Marrow* v. *Moskowitz,*

255 N. Y. 219; *Matter of Porianda*, 256 id. 423), unless the transactions had between him and the objector destroyed or impaired her right thereto. The incident of the right of survivorship is a characteristic of joint tenancy but a joint tenancy may be terminated or severed before such right accrues by the act of either joint tenant. A joint tenant, as an incident to his tenure, may always terminate the joint tenancy by transfer or conveyance of his interest. Joint ownership of a bank deposit does not differ from any other joint ownership. (*Matter of Suter*, 258 N. Y. 104, 106.) Decedent, by creating the joint account, vested in his wife ownership of one-half of the joint property from the date of the creation of the joint tenancy. To that extent, the deposit was irrevocable, since the wife had a vested property interest. (*Moskowitz* v. *Marrow*, 251 N. Y. 380.) Decedent could not, by withdrawing the entire deposit, destroy the joint tenancy or title of his wife, as survivor (*Marrow* v. *Moskowitz, supra*), although he could destroy the joint ownership in the entire deposit to the extent of his withdrawals of no more than his equal share for his own use. (*Matter of Suter, supra.*)

The inherent right of each joint tenant to dispose of his undivided interest is unrestricted. The disposition may take the form of a sale, assignment, gift, mortgage or pledge. (Schouler, Personal Property [5th ed.], § 163; 33 C. J. § 10, p. 907.) The transaction between the decedent and the bank involved the creation of a debt and a valid pledge. While the title to the property pledged remained in the decedent, the bank acquired a lien thereon enforcible in equity against him or his estate. In securing the debt with the pledged property he indicated an intention to reduce the funds pledged to his separate possession and thus destroy the joint estate with respect thereto. The fact that he did not actually withdraw the funds from the savings account does not make the severance less real. By depositing the book and signed orders on the account he put the bank in a position, upon his default, to make the actual withdrawal. If he had actually gone to the savings bank and made the withdrawals and deposited the moneys taken out with the bank as security, instead of the book and the orders, it cannot be disputed that, by so doing, he would have destroyed the joint tenancy with respect thereto. In legal effect his act was tantamount to a withdrawal. However, in view of the nature of the tenancy, decedent could only bind his own interest, and in so far as he purported to pledge the account in excess of his one-half share therein, the transaction cannot be considered binding upon his wife, as equal cotenant of the remaining half, in the absence of assent or ratification upon her part. The testimony fails to

establish either. Even if the form of the account did not convey sufficient notice to the objector that it was receiving property pledged by one, not the sole owner, inquiry made at the savings bank would have disclosed the interest of the wife as joint tenant. Its lien upon the collateral must be confined to one-half of the sum on deposit at the date of decedent's death. Inasmuch as the act of the decedent constituted a severance of the tenancy to the extent of his one-half interest in the account, and the ownership of which remained in him and passed at death to his representative, subject to the objector's rights as pledgee, the executrix should, in my opinion, include such interest in her account. The remaining half is determined to be her sole and absolute property.

The decree may, therefore, provide that the objector has a valid claim against the decedent's estate for the sum of $3,000 and interest; that the executrix, as surviving tenant, is the owner of one-half of the sum on deposit in the joint account at the date of decedent's death, and entitled to a return of the collateral, held by the objector, upon paying or releasing to it decedent's one-half interest in the account. Objections sustained to the extent indicated and account settled accordingly.