### 51863. SPURLOCK v. COMMERCIAL BANKING COMPANY.

CLARK, Judge.

This is a case of first impression as to the primary

issue: Can a lender bank holding a security agreement executed by only one of two joint owners of a certificate of deposit with right of survivorship deduct upon the loan's maturity the debt owed by its borrower from the proceeds of the joint deposit certificate after the death of the individual borrower? Other legal problems presented in this appeal are also discussed in the opinion.

On November 15, 1971, Commercial Banking Company of Hahira, ("Bank"), a Georgia banking corporation, issued its certificate of deposit in the amount of $28,000 to S. T. Spurlock and Victoria B. Spurlock (husband and wife) jointly with right of survivorship to mature two years from date. On January 3, 1973, the husband alone executed a $9,000 promissory note payable to Bank, his loan to become due and payable September 15, 1973, approximately nine months after the date of the loan. This loan to the husband was secured by "crops" as well as "any and all balances, credits, deposits, accounts, items and monies of the undersigned [husband] now or hereafter with the Holder [Bank]. . ." It was agreed that Bank "shall have a lien upon, security title to and a security interest in the collateral to secure the payment of this Note. . ."

As the husband desired credit life insurance on the loan, credit life insurance premiums were included in the amount financed. Unfortunately, however, credit life insurance could not be obtained on behalf of the husband because he was deemed a poor health risk by various insurers.

The husband died on February 12, 1973. That was a date prior to maturity of the loan (September 15, 1973) and also prior to the maturity (November 15, 1974) of the deposit certificate. He was never made aware of the fact that the loan was not covered by credit life insurance; and it was not until after his death that Bank credited the loan with the amount of the unexpended insurance premium.

The loan was not paid when it matured on September 15, 1973, and, of course, credit life insurance was not forthcoming.

On November 15, 1974, the maturity date, the surviving wife presented the certificate of deposit to Bank. The Bank declined to pay the full amount of the

savings certificate on the ground that it was entitled under the terms of its agreement with the borrower husband to set off the debt evidenced by the husband's promissory note when it had not been paid on its due date. The balance was tendered and later paid into the court treasury by stipulation between counsel.

The complaint sought recovery of the full amount of the certificate of deposit upon two grounds: one, Bank's failure to pay principal and interest thereon in full; two, Bank's failure to procure credit life insurance for the husband. Additionally, punitive damages were claimed on the basis that the Bank's conduct constituted a tort warranting recovery thereof. Expenses of litigation were also sought for alleged stubborn litigiousness.

Defendant Bank answered, denying the material allegations of the complaint. Furthermore, Bank asserted it was entitled to apply the proceeds of the certificate of deposit to payment of the husband's loan by virtue of the security provisions of the note. With regard to the credit life insurance claim, defendant Bank pleaded that the wife did not have a sufficient legal interest to recover upon that ground.

Following discovery, both Bank and the plaintiff widow moved for summary judgment. Bank's motion was granted; the wife's motion was denied. The court ruled (1) that the certificate of deposit was subject to Bank's security interest; (2) that the wife did not have a legal interest in the credit life insurance claim as it would vest in the decedent's representative; and (3) that exemplary damages and expenses of litigation were not authorized by the evidence.

I. The Savings Certificate Claim

A.  *The Nature of the Security Agreement.* Banks, savings and loan associations and like organizations may obtain security interests on savings deposits by express agreements to that effect.[1] 9 CJS 636, Banks & Banking, § 309. Here Bank acquired a security interest in the

---

[1]It should be noted that the secured transactions article of the Uniform Commercial Code does not apply to transfers of bank deposits or savings accounts. Code Ann.

certificate of deposit by virtue of an agreement which conveyed "a lien upon, security title to and a security interest in" the certificate.

In spite of the appearance of the phrase "security title"[2] we think it is clear that the security agreement merely created a lien upon the husband's interest in the savings certificate. A security instrument cannot purport to convey a lien and title; it cannot simultaneously retain and not retain title. *Bacon v. Hanesley,* 19 Ga. App. 69 (1) (90 SE 1033). Thus, the instant security agreement cannot be construed as giving and withholding title to the certificate of deposit. An examination of the agreement as a whole reveals that it is in all respects a lien. The husband did not intend to transfer full legal ownership of the certificate of deposit to Bank.

B. *The Nature of a Joint Certificate of Deposit With Right of Survivorship.* The concept of a joint tenancy is not well suited to bank accounts or certificates of deposit. A joint tenancy must embrace the four unities of time, title, interest and possession. 4A Powell on Real Property § 616 (1975). In the usual joint deposit, however, there is no unity of interest "since one party reserves the right to use all of the funds without accounting to the other" Kepner, The Joint and Survivorship Bank Account — A Concept Without a Name, 41 Calif. L. Rev. 596, 601 (1953). With regard to joint bank deposits, therefore, the statutory abolition of joint tenancies (Code § 85-1002) has practi-

---

§ 109A-9—104 (i). Kock, Georgia Commercial Practice, § 7-1 (1964).

[2]Under the common law, security title was not the equivalent of an unqualified legal title. In re Richheimer, 221 F 16, 22 (7th Cir. 1915) (dictum); In re Imperial Brewing Co., 127 F2d 766, 769 (4th Cir. 1942). It can be argued, however, that under modern conditions of trade and commerce security title vests full legal ownership in the transferee. Century Throwing Co. v. Muller, 197 F 252 (3d Cir. 1912); In re Richheimer, supra. Of course, in most commercial contexts there is no reason to distinguish between security title and security interest. See, e.g., Code Ann. § 109A-2—401(1).

cal value.[3]

Although joint tenancies are prohibited in this state, the survivorship feature of joint tenancies is not prohibited; and where a contract expressly provides for survivorship, it will be enforced. *Equitable Loan & Security Co. v. Waring,* 117 Ga. 599 (44 SE 320).[4] Thus, two or more persons may contract to (1) own jointly a bank account or savings certificate during their lives and (2) entitle the survivor to acquire the remaining balance upon the other's death. 48 CJS 914, Joint Tenancy, § 3. "Under this approach, survivorship can be made an element of the joint account by agreement among the depositors and the bank." Jus Accrescendi and Joint Bank Accounts: A Look at the Georgia Story, 7 Ga. S. B. J. 370, 374 (1971) (an excellent student note by Marcus B. Calhoun, Jr.). The survivorship interest arises because of the contract and not because it is an incident of the

---

[3]Although Code § 85-1002 abolished joint tenancies, our legislature formerly sanctioned the establishment of "joint tenancy" deposits in savings and loan associations. Code § 16-431 (Ga. L. 1952, p. 305). However, no comparable legislative action ever was taken with regard to joint deposits in banks. Code § 13-2039 (now Code § 41A-1603) was a "bank shield" statute only; it did not authorize "joint tenancy" bank deposits. *Clark v. Bridges,* 163 Ga. 542 (136 SE 444). Moreover, it should be noted that Code § 16-431 was replaced by a "bank shield" statute (Code § 41A-3521; Ga. L. 1974, pp. 705, 949); thus the approach to joint bank deposits and joint savings and loan deposits is now uniform. The status of Federal savings bonds is governed by Federal law and Treasury Department regulations. See *Knight v. Wingate,* 205 Ga. 133 (52 SE2d 604).

[4] *Waring* only indicated that the right of survivorship could be created by contract. Misinterpreting this case, however, our courts occasionally stated that a depositor contractually created a "joint tenancy" with its incident right of survivorship. See, e.g., *Wilson v. Brown,* 221 Ga. 273 (144 SE2d 332); *Nash v. Martin,* 90 Ga. App. 235 (82 SE2d 658).

common law joint tenancy. Kepner, supra, p. 600.

Because of the abolition of joint tenancies, the interest created in a joint account or savings certificate with right of survivorship is a life estate with an alternative contingent remainder in fee simple. "[T]his is a completely different interest from the joint tenancy of the common law. A true joint tenant could sever the joint tenancy by conveying his interest to a third party and thus defeat the survivorship." Agnor, Joint Tenancy in Georgia, 3 Ga. S. B. J. 29, 30 (1966). Since a contingent remainder is indestructible, however, the right of survivorship in a joint account cannot be destroyed by "severance." Halleck v. Halleck, 216 Or. 23 (337 P2d 330); Holbrook v. Holbrook, 240 Or. 567 (403 P2d 12).

C. *The Effect of the Security Agreement Upon the Certificate of Deposit.* Jurisdictions are in disagreement as to whether an encumbrance of joint property by lien or mortgage results in severance of a joint tenancy and destruction of the incident of survivorship. Annot., 64 ALR2d 918, 934. In People v. Nogarr, 330 P2d 858 (Cal. App. 1958), the court held that no severance of a joint tenancy resulted where a joint tenant executed a mortgage upon the property and that, consequently, the surviving tenant's interest in the whole was not affected by the mortgage. Accord, D. A. D., Inc. v. Moring, 218 S2d 451 (Fla. App.) (1969) (mortgage on interest of joint tenant merely imposes a lien on an interest which terminates on death). On the other hand, in Tracy-Collins Trust Co. v. Goeltz, 5 Utah 2d 350 (301 P2d 1086), it was said that the execution of a mortgage by a joint tenant severed and terminated the joint tenancy by creating a tenancy in common. It has been suggested that the reason behind the seemingly contrary decisions is that the jurisdictions differ as to whether a mortgage operates as a lien or charge upon the mortgagor's interest or a conveyance of the mortgagor's interest. People v. Nogarr, supra.

The question of whether the execution of a lien by a joint tenant results in a severance of a joint tenancy is only of academic interest, however, since joint tenancies are abolished in Georgia. As noted previously, a right of survivorship in our state is not an incident of joint

tenancy; it is a creation of contract and cannot be destroyed by "severance."

In support of its argument that the certificate of deposit is subject to the lien, Bank relies upon In re Hoffman's Estate, 175 Misc. 607 (25 NYS2d 339). In that case one of two joint tenants in a Bank account pledged the account as security for a loan. The court held that although survivorship is an incident of joint tenancy (New York recognized a joint tenancy in bank accounts) the pledge resulted in a severance of the joint tenancy and, consequently, the surviving tenant's interest was subject to the claim of the pledgee. Since this decision was founded upon the common law principle of severance of a joint tenancy, it does not fit into the framework of Georgia bank account law and accordingly we do not deem it persuasive.

In Hopkins Place Savings Bank v. Holzer, 175 Md. 481 (2 A2d 639) a husband created a joint savings account in trust[5] for himself and his wife. Thereafter, the husband alone pledged the savings account as security for a loan from the bank. Following the husband's death, the bank offered to pay the wife only the balance in the account after deducting the amount owing upon her husband's note. On appeal, the court rejected the bank's theory that the husband's pledge was binding upon the wife and ruled: "All . . . that passed to the Bank by the terms of the collateral note . . . was to transfer an equitable title and right to the interest of the husband, which would be defeated by the death of the husband before the wife. The bank required nothing of the wife and was content to accept the interest of the husband alone in the deposit as security. The Court cannot now enlarge the terms of a contract in aid of the bank."

We find the logic of Holzer compelling and in accord with Georgia law. A joint depositor's interest in a joint account with right of survivorship terminates upon his

---

[5]Maryland upholds joint accounts under a trust theory. "[T]his is not a deposit made in trust for another, but rather a joint account upheld as a trust." Kepner, supra, p. 599.

death (*Sams v. McDonald,* 117 Ga. App. 336 (160 SE2d 594)), and there is an immediate vesting of the account in the surviving depositor. *Sams v. First Nat. Bank,* 119 Ga. App. 96 (166 SE2d 394). It follows that a mere lien upon a joint depositor's interest terminates upon the death of that depositor and that the survivor succeeds to the entire account.

D. *Conclusion.* By virtue of the husband's execution of the note and security agreement, Bank possessed a lien upon the husband's interest in the certificate of deposit. The death of the husband prior to the maturity of his note terminated his interest in the certificate of deposit and defeated defendant bank's lien. Accordingly, the wife, as surviving depositor, is entitled to the entire amount of the certificate of deposit.

## II. The Credit Life Insurance Claim

"[W]here one undertakes to procure insurance for another, and is guilty of fraud or negligence in his undertaking, he is liable for loss or damage to the limit of the amount of the agreed policy." *Home Building & Loan Assn. v. Hester,* 213 Ga. 393, 395 (99 SE2d 87). In such suits, damages arise from breach of the contract to procure insurance (*Farmers &c. Bank v. Winfrey,* 89 Ga. App. 122 (78 SE2d 818)), or from the fraudulent conduct of the procuring agent (*North American Loan &c. Assn. v. Dykes,* 58 Ga. App. 457 (198 SE 831)). But as in any lawsuit, the party seeking relief must have a legal interest in the cause of action. *Patellis v. Tanner,* 199 Ga. 304 (34 SE2d 84); *Franklin v. Mobley,* 73 Ga. App. 245 (36 SE2d 173).

We agree with Bank that the wife did not have a sufficient legal interest to recover for the failure to obtain credit life insurance for the husband. The injury (if any) complained of caused damage to the husband and the bank (as would-be beneficiary of a credit life insurance policy), not the wife. If the wife's right to recover the full amount of the certificate of deposit had been impaired by bank's lien, we think she would have a legal interest in the credit life insurance claim. But, as pointed out in Division I, such is not the case. Accordingly, the wife has no legal interest in the credit life insurance claim. Compare *Beiter v. Decatur Federal &c. Assn.,* 222 Ga. 516

(150 SE2d 687).

III. Exemplary Damages and Expenses of Litigation

A certificate of deposit creates a contractual relationship of debtor and creditor between a bank and its depositor. *Bank of Thomasville v. Lester,* 177 Ga. 306 (1) (170 SE 189); 3 EGL 216, Banks & Banking, § 177. Thus, a bank's refusal to pay a depositor gives rise to an action for breach of contract. Since exemplary damages cannot be awarded in breach of contract actions (Code § 20-1405), they cannot be recovered because the bank refused to pay the full amount of the certificate of deposit.

Although expenses of litigation are allowable in contract actions where a defendant has been stubbornly litigious (Code § 20-1404), the mere refusal to pay a disputed claim does not warrant the award of such expenses. *Murphy v. Morse,* 96 Ga. App. 513 (100 SE2d 623). The evidence adduced below shows that Commercial has not been stubbornly litigious.

*Judgment reversed. Bell, C. J., and Stolz, J., concur.*

ARGUED MARCH 8, 1976 — DECIDED MAY 12, 1976 — REHEARING DENIED JUNE 11, 1976 —

*Bennett & Wisenbaker, Reginald C. Wisenbaker,* for appellant.

*Tillman, Brice, McTier, Coleman & Talley, John T. McTier,* for appellee.