69158. GUTHRIE v. GENERAL MOTORS ACCEPTANCE
CORPORATION et al.
(322 SE2d 752)

BANKE, Presiding Judge.

Appellant Charles Guthrie sued D. L. Claborn Buick-Opel, Inc. (Claborn), General Motors Acceptance Corporation (GMAC), and Motors Insurance Corporation (MIC) to recover damages for their failure to procure motor vehicle casualty insurance in his name following his purchase of an automobile from Claborn. GMAC counterclaimed to collect the balance owing on an installment sale contract signed by the appellant at the time he purchased the automobile. This appeal follows the grant of a directed verdict in favor of all the defendants with respect to the appellant's complaint and in favor of GMAC on the counterclaim.

Claborn operates a General Motors automobile dealership, GMAC is in the business of purchasing installment sale contracts from such dealers, and MIC is in the business of writing physical damage insurance on automobiles which are financed in this manner. The appellant and another individual named Victor Howard jointly purchased a Buick automobile from Claborn on or about March 19, 1980. Each paid one-half of the $500 down payment and executed an installment sale contract for the unpaid portion of the purchase price, with Howard signing as "buyer" and the appellant as "co-buyer." Added to the total amount of the indebtedness was a $220 charge for the purchase of "physical damage insurance" from MIC for a term of 12 months. The appellant testified that during the course of his discussions with Claborn's salesman, he was informed that "we had 12 months of insurance paid in with the notes and wouldn't be no more insurance until after the 12 months expired."

After the sale was completed, Claborn transmitted the installment sale contract to GMAC, along with two credit applications separately signed by the appellant and Howard, and a "rating sheet" signed by Howard only. This latter document was described as an application for physical damage insurance on the vehicle. In the normal course of events, it was GMAC's practice to forward all such documents to MIC. MIC would then remove the "rating sheet," return the installment contract and credit applications to GMAC, and issue the

physical damage insurance policy, and GMAC would purchase the installment contract and pay the premium on the policy. These procedures were evidently followed in the present case.

Because the "rating sheet" transmitted to MIC pertained only to Howard, the insurance policy was issued in his name alone, and the appellant was not sent a copy of the policy. On May 8, 1980, MIC sent Howard a letter stating that the correct premium for one year of coverage was actually $625 rather than $220 and requesting payment of the additional amount. Howard did not respond to this letter; and on June 23, 1980, MIC sent him a notice that the policy would be cancelled effective July 4, 1980, if the additional premium were not paid prior to that date. No such notice was sent to the appellant, and no additional premium was ever paid. On September 21, 1980, the automobile was virtually destroyed in an accident. MIC declined to accept liability under the policy, and GMAC subsequently declared the contract in default due to non-payment of the monthly installments. *Held*:

1. "[W]here one undertakes to procure insurance for another and is guilty of fraud or negligence in his undertaking, he is liable for loss or damage to the limit of the agreed policy. (Cits.)" *Beiter v. Decatur Fed. &c. Assn.*, 222 Ga. 516, 518 (2) (150 SE2d 687) (1966). In accordance with this principle, and in view of the appellant's testimony that Claborn's salesman told him "we had 12 months of insurance paid in with the notes," we hold that a jury issue was created as to whether Claborn was liable to the appellant for its failure to procure coverage in his name. The appellant's failure to read the policy after it was issued does not operate to defeat this claim, since he was never furnished with a copy of the policy. Compare *Turner, Wood & Smith, Inc. v. Reed*, 169 Ga. App. 213 (311 SE2d 859) (1983). Nor is Claborn insulated from liability by the Supreme Court's ruling in *C & S Nat. Bank, Augusta v. Arnold*, 240 Ga. 200 (240 SE2d 3) (1977). There, a bank which was financing a borrower's purchase of a mobile home was held to have breached no duty to him by negligently misrepresenting that the title to the mobile home was in order, when in fact the mobile home had been stolen. Unlike the alleged misrepresentation at issue in the present case, that statement could not reasonably be construed as establishing an undertaking to perform any service for the purchaser or to act as his agent for any purpose. Finally, we reject Claborn's contention that on cross-examination the appellant made a binding admission that Claborn had breached no duty to him. Given the length and complexity of the hypothetical question to which the appellant was responding at the time, the jury was authorized to infer that he had not fully understood the question and that he had no intention of abandoning his claim.

2. The trial court did not err in directing a verdict in favor of

MIC. "It is generally recognized that where an agent represents two adverse parties in a transaction with the knowledge and consent of both, neither principal is liable to the other for the tortious acts of the agent so situated where the opposite principal is not in complicity with the agent or in no way participates in the tortious act." *Hodges v. Mayes,* 240 Ga. 643, 644 (242 SE2d 160) (1978). As there was no evidence that MIC had dealt directly with the appellant or was aware of the alleged misrepresentation made by Claborn regarding the procurement of insurance coverage on his behalf, it follows that there was no basis for a finding of negligence or fraud on MIC's part. Furthermore, there being no evidence of a master-servant relationship between Claborn and MIC, MIC cannot be held vicariously liable for Claborn's alleged fraud or negligence under the doctrine of *respondeat superior.* Accord *Logan v. American Bankers &c. Co.,* 168 Ga. App. 647 (2) (310 SE2d 263) (1983). Finally, despite the fact that Claborn may have been authorized to bind MIC to coverages pursuant to a written agreement between MIC and an organization which Claborn's counsel characterized as Claborn's "parent corporation," we hold that MIC cannot be held contractually liable to the appellant. Although the dual agency relationship is no bar to such liability (see *Home Materials, Inc. v. Auto Owners Ins. Co.,* 250 Ga. 599, 603 (300 SE2d 139) (1983)), pursuant to OCGA § 33-24-33 (a), oral insurance binders are not valid beyond 90 days from their effective date unless extended or renewed with the written permission of the insurance commissioner or in accordance with rules and regulations promulgated by the commissioner. The destruction of the automobile at issue in this case occurred well over 90 days after the issuance of the alleged oral binder by Claborn, and there was no evidence of any subsequent promise or undertaking by Claborn or MIC to renew the binder. It follows that MIC cannot be held liable to the appellant either in tort or contract based on Claborn's alleged misrepresentations. Compare *Howard v. Moore Group, Inc.,* 168 Ga. App. 811 (3) (310 SE2d 564) (1983) (where the accident occurred less than two weeks after the alleged binder was issued); *Dairyland Ins. Co. v. McIntosh,* 171 Ga. App. 782 (321 SE2d 110) (1984).

3. The trial court was also correct in granting a directed verdict to GMAC. It appears without dispute that GMAC's only functions in the transaction were to transmit the insurance application and other documents to MIC and then to purchase the retail installment contract from Claborn and remit the premium to MIC. In and of themselves, these actions created no duty to the appellant with respect to the procurement of insurance coverage, nor is there any basis for imputing liability for Claborn's alleged misrepresentations to GMAC. There being no dispute regarding the appellant's liability under the installment sale contract, it follows that GMAC was entitled to pre-

vail on both the main claim and the counterclaim as a matter of law.

4. For the above reasons, the judgment of the trial court is affirmed with respect to both MIC and GMAC but reversed with respect to Claborn.

*Judgment affirmed in part and reversed in part. Pope and Benham, JJ., concur.*

DECIDED SEPTEMBER 26, 1984.

*William A. Wehunt*, for appellant.
*Ralph A. Pitts, David S. Currie, Harold B. Thompson, Neil Dickson, Nolan C. Leake*, for appellees.