A98A1766. HEDQUIST et al. v. MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. et al.
(511 SE2d 558)

Judge Harold R. Banke.

John H. Hedquist III, individually and as trustee of the John H. Hedquist III & Associates Profit Sharing Plan & Trust, and John H. Hedquist, Jr. (collectively "Hedquist") sued Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), Jack Camarda, Paul Brostrom, Suzanne D. Cook, and five members of the board of directors of Barton Industries, Inc. ("Barton"), an oil services company headquartered in Shawnee, Oklahoma. Merrill Lynch was sued for fraud, negligent misrepresentation, and for criminal violations of the Georgia and Florida Racketeer Influenced & Corrupt Organizations ("RICO") statutes. Hedquist premised Merrill Lynch's liability on acts of fraud and negligent misrepresentation allegedly committed by Suzanne D. Cook, a former Merrill Lynch vice president and securities analyst. Hedquist claimed that Cook made false statements to John H. Hedquist III ("JHHIII") and also authorized the dissemination of false and misleading press releases on December 14 and 15, 1990, about Barton's financial health. These press statements were designed to minimize the seriousness of Barton's financial difficulties. Hedquist asserted that by relying upon the misleading press releases, it suffered losses by not selling its Barton stock before Barton filed bankruptcy.

The trial court granted Merrill Lynch's motion to dismiss finding that "the claims against Defendant Merrill Lynch are predicated on

the purported acts of Suzanne Cook, a former Merrill Lynch employee [whom] Plaintiffs voluntarily dismissed with prejudice. . . ."

Hedquist sued Camarda and Brostrom, the owners of Financial Marketing Services and the former employer of JHHIII, a broker registered with the Securities & Exchange Commission ("SEC"). The record shows that in late 1989, Camarda and Brostrom loaned $750,000 to JHHIII to purchase Barton stock. From October 1990 through the end of December 1990, Camarda and Brostrom also invested heavily in Barton on the advice of JHHIII. In the fall of 1990, JHHIII informed them that he had inside information about possible "padding" of Barton's inventory. JHHIII claimed that they assured him "they would investigate the matter." During November and December, JHHIII, Camarda and Brostrom discussed their mutual misgivings about Barton.

In early December, Coopers & Lybrand, independent auditors, documented and disclosed Barton's serious financial problems. JHHIII knew about the negative findings of this audit which were set forth in an early December press release not at issue here. In the meantime, JHHIII had been pursuing his own investigation and articulated his concerns in highly critical, detailed letters to C. W. Earl Johnson, Barton's president.[1]

Notwithstanding JHHIII's knowledge of Barton's problems, Hedquist sued Camarda and Brostrom for fraud and negligent misrepresentation for making false statements to JHHIII about Barton's financial situation. But Camarda and Brostrom were not members of Barton's board of directors, and they testified that they "had no part in drafting, determining the content of, approving or deciding to issue" the press releases. No evidence showed otherwise. Determining that Hedquist failed to prove the existence of any genuine disputed issue of material fact, the trial court found Camarda and Brostrom were entitled to judgment as a matter of law. Hedquist appeals both judgments. *Held*:

1. Hedquist contends that the trial court erred in dismissing its complaint against Merrill Lynch due to its voluntary dismissal of Cook. The threshold inquiry is whether Merrill Lynch's liability was based solely on the doctrine of respondeat superior for the actions of its servant, Cook, or premised on the theory of joint and several liability as joint tortfeasors. Where the liability of the master "is purely

---

[1] In early 1991, the Federal Bureau of Investigation and the SEC investigated the circumstances surrounding the demise of Barton. Both Johnson and Victor L. Joyce, its chief financial officer, were indicted on federal charges of conspiracy, bank fraud, falsifying company books and records, stock manipulation, and false statements to the auditors, the SEC, and others. Joyce pleaded guilty to several criminal charges; Johnson died before the conclusion of his case.

derivative and dependent entirely upon the doctrine of respondeat superior, a judgment on the merits in favor of the servant and against the third person is res judicata in favor of the master in a suit by such third person. [Cits.]" *Hosp. Auth. of Calhoun County v. Walker*, 224 Ga. App. 163, 165 (2) (480 SE2d 849) (1996). A dismissal with prejudice operates as an adjudication on the merits. *Marchman & Sons, Inc. v. Nelson*, 251 Ga. 475, 477 (306 SE2d 290) (1983).

Notwithstanding Hedquist's use of the phrases "jointly and severally liable" and "vicarious liability," all of the alleged acts of misconduct asserted against Merrill Lynch were rooted in the doctrine of respondeat superior stemming from the alleged misconduct and actions of Cook.[2] Having dismissed Cook with prejudice, Hedquist could not maintain its tort claims against Merrill Lynch which derive solely from Cook's purported misconduct. *Harris v. Hanna Creative Enterprises*, 208 Ga. App. 549, 550 (1) (430 SE2d 846) (1993). Compare *Rowland v. Vickers*, 233 Ga. 67, 68 (209 SE2d 592) (1974).

RICO liability arises solely from the commission of certain predicate acts which must constitute independent criminal violations of one of the statutes specified in the RICO act. OCGA § 16-14-4 (b); Fla. Stat. § 895.03 (3); *Larson v. Smith*, 194 Ga. App. 698, 699 (391 SE2d 686) (1990). RICO requires a "pattern of racketeering activity," not isolated incidents. OCGA § 16-14-3 (8) and (9) (A) (xxi); Fla. Stat. § 895.02 (4) ("Pattern" means "at least two incidents of racketeering conduct . . . not isolated incidents."). See *Emrich v. Winsor*, 198 Ga. App. 333 (401 SE2d 76) (1991).

Hedquist's Georgia and Florida RICO claims against Merrill Lynch were predicated on the misleading December press releases. But these releases were public statements approved by Barton's board of directors and disseminated by Barton, not Merrill Lynch. See *Guthrie v. Gen. Motors Acceptance Corp.*, 172 Ga. App. 260, 262 (2) (322 SE2d 752) (1984) (absent evidence of master-servant relationship, master cannot be held vicariously liable for another's alleged fraud under the doctrine of respondeat superior). No evidence showed that Barton was acting on behalf of Merrill Lynch when Barton released the information. Moreover, Hedquist's allegations, if proven, would show, at most, isolated misconduct, not a pattern of proscribed criminal activity by Merrill Lynch. *Larson*, 194 Ga. App. at 699 (interrelated pattern of criminal activity required); see *Cobb v. Kennon Realty Svcs.*, 191 Ga. App. 740, 741 (2) (382 SE2d 697) (1989). Thus, assuming the truth of the allegations in the complaint as we must in this procedural context, Hedquist failed to allege two

---

[2] The complaint mentions two additional employees of Merrill Lynch by name but does not allege any illegal conduct or acts of fraud or negligent misrepresentation involving them.

separate and distinct, criminal "predicate acts" committed by Merrill Lynch. OCGA § 16-14-3 (9) (A) (xxi); Fla. Stat. § 895.02 (4). Compare *State of Ga. v. Shearson Lehman Bros.*, 188 Ga. App. 120, 121 (2) (372 SE2d 276) (1988) (allegations of multiple state securities crimes, mail fraud, wire fraud, and federal RICO crimes satisfied "pattern" requirement). See also *Stricker v. Epstein*, 213 Ga. App. 226, 229 (2) (444 SE2d 91) (1994) (claims alleging violations of securities laws governed by a two-year statute of limitation). For these reasons, even assuming that the court's consideration of the dismissal order converted the motion into one for summary judgment, we find no error. *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991).

2. Hedquist contends that genuine issues of material fact precluded the summary judgment granted to Camarda and Brostrom. Misrepresentations are actionable only where the complaining party, in the exercise of prudence and due diligence, is justified in relying thereon. *Tri-Eastern Petroleum Corp. v. Glenn's Super Gas*, 178 Ga. App. 144, 145-146 (1) (342 SE2d 346) (1986). Reliance upon another's representations is not actionable where the recipient, as here, has equal means of ascertaining the truth. *Scott v. Fulton Nat. Bank*, 92 Ga. App. 741, 743-744 (2) (89 SE2d 892) (1955).

JHHIII was an experienced, licensed broker who had first-hand knowledge of Barton's problems. JHHIII's letters to Johnson confirm that before the alleged misrepresentations, JHHIII already harbored grave suspicions of internal wrongdoing and mismanagement by Johnson and others in control of Barton. *Garcia v. Unique Realty &c.*, 205 Ga. App. 876, 877 (424 SE2d 14) (1992) (fraud claim requires reasonable reliance upon representation and damages proximately caused by false representation). Thus, even assuming arguendo that Camarda and Brostrom told JHHIII that he should "make peace" with Johnson, and that Barton "was not in trouble" or was in "sound financial condition," Hedquist cannot establish its reasonable reliance thereon and that its losses were caused thereby. Id. at 877 (1); accord *Williams v. Fallaize Ins. Agency*, 220 Ga. App. 411, 413 (1) (469 SE2d 752) (1996); *Wilkinson v. Walker*, 143 Ga. App. 838, 839 (240 SE2d 210) (1977).

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED FEBRUARY 2, 1999 —

*Sumner & Anderson, William E. Sumner, Rosemary S. Armstrong*, for appellants.

*Rogers & Hardin, Brett A. Rogers, Richard H. Sinkfield*, for appellees.